ELIZA CONAN v. CITY OF ELY.[1]

December 18, 1903.

Nos. 13,692—(99).

**Eminent Domain—Damages.**

In a proceeding to condemn a piece of land appropriated from a larger tract by a municipal corporation to be used in extending improvements to its waterworks, *held* that the true rule of damages to be awarded the landowner is the market value of the property taken for all legitimate purposes, and the fact that a valuable spring enhances the market value of the property taken was a proper subject of inquiry; and the further fact that the corporation itself was supplying water to the people did not justify it in depriving the landowner of the benefits of the spring, or in having its value in that respect excluded, nor make the particular necessities of the city for this tract so distinct from the proper elements affecting its market value that its peculiar adaptation for purpose of a water supply could not be considered. Union Depot v. Brunswick, 31 Minn. 297, considered and distinguished.

**Evidence—Opinion.**

The exclusion of an opinion by one witness, which led the trial court to limit the amount of the verdict, *held* to be erroneous in not giving to the testimony of such witness any weight.

**Assignments of Error.**

Cappis v. Wiedemann, 86 Minn. 156, and Olson v. Berg, 87 Minn. 277, so far as their construction therein given of Laws 1901, c. 113, to the effect that assignments of error must be based upon either an exception taken during the trial or included in the motion for a new trial, applied and followed.

In proceedings in the district court for St. Louis county by the City of Ely to condemn certain land for an extension of the city waterworks,

[1]Reported in 97 N. W. 737.

Eliza Conan, the owner of the land, appealed from an award made by the commissioners. The case was tried before Cant, J., and a jury, which rendered a verdict in her favor for $187.50. From an order denying a motion for a new trial, she appealed. Reversed.

Porter J. Neff, for appellant.

Baldwin & Baldwin, for respondent.

LOVELY, J.[2]

The city of Ely, through proper proceedings authorized in its charter, appropriated an acre and a quarter of land adjacent to its municipal waterworks. Commissioners were appointed to appraise the damages to the landowner, and an award was duly returned, from which there was an appeal to the district court. On the trial the only question was the amount of compensation she was entitled to recover. At the close of the evidence the court instructed the jury that the verdict should not exceed the sum of $150 per acre, which was adopted by the verdict. She moved for a new trial, which was denied. This appeal is from that order.

It appears that appellant was the owner of a forty-acre tract of land near the city, of which the land appropriated was a part. There was a fissure spring thereon discharging large quantities of water daily, which under her claim substantially enhanced its market value over other lands in the same locality. The limitation of the amount recoverable by the court was not excepted to, neither was it made a specific point of objection to the verdict on the motion for new trial; and under the rule we have been required to adopt in giving effect to Laws 1901, p. 121 (c. 113), we are not at liberty to review errors assigned to the charge of the court, or to several other orders that are criticised upon the same ground. Cappis v. Wiedemann, 86 Minn. 156, 90 N. W. 368; Olson v. Berg, 87 Minn. 277, 91 N. W. 1103.

But a valuation of the tract taken by one witness for appellant was stricken out, which order was duly excepted to and must be considered. This witness, after having given a detailed description of the land taken, and its relation to the whole tract from which it was separated, described the spring, its capacity and general utility for the purposes of

[2]START, C. J., absent, sick, took no part.

a water supply, and, having shown proper qualifications to express an opinion of its market value, estimated the same at a much higher sum than the amount which the jury were allowed to give by the restriction of the trial court. No other witness rated the value of the land taken higher than $150 per acre, and undoubtedly the theory of the court, in limiting the amount to be allowed by the verdict, was that the opinion of this witness was entitled to no consideration whatever. We are inclined, in view of the entire record, to treat the estimate of this witness with more importance than was attributed to it by the trial court. It might have been too high, but its exclusion, in connection with the grounds upon which it was based, did not require the jury to agree to the full extent with the judgment therein expressed; but, if it had any proper tendency to appreciate the value of plaintiff's land above the limit fixed by the court, the consideration of its effect was for the jury, and its exclusion was error. After the questions showing the qualification for the judgment of the witness, the direct examination proceeded as follows:

"Q. You are acquainted  *  *  *  with the situation of affairs in Ely, so far as the water supply is concerned for the town? A. Yes, sir. Q. You are familiar with this spring? A. Yes, sir. Q. And, in a general way, the character of the water coming from the spring? A. Yes, sir. Q. And the quantity of water coming from the spring? A. Yes, sir. Q. And do you know whether or not the supply from this spring is constant, in a general way? A. It is constant. Q. As long as you have lived there the supply has been about the same, as near as you can judge? A. Yes, sir; as near as I could judge. Q. Under all the circumstances and conditions existing, and the various uses this acre of ground and the spring upon it may be put to, what would you say is the value of this acre of ground, with the spring on it, for all purposes? A. I should say $10,-000."

Upon cross-examination he testified as follows:

"Mr. Conan, you base that opinion on the fact that you believe this is the only available supply of water? A. I think that has a

91 M.—9

great deal to do with it.   Q. And the fact that the city must have it for its water supply? A. It is the most convenient. Q. And any other water supply would be very expensive? A. Yes.   Q. You base it on the fact of its value to the city by reason of that? A. Yes." On behalf of plaintiff: "Q. By 'City' you mean people of the city of Ely? * * * A. Yes." On cross-examination: "Q. And the water is supplied to the city of Ely through the waterworks of the city very largely? There are some wells in the city? ` A. Yes, sir.   Q. And you have based your opinion as to the value of the property that the city must have it for its water supply? A. That has a great deal to do with it.   Q. That is the basis of your valuation? A. Yes, sir."

Were it not for the answer to this last question, no doubt could be raised as to the materiality of the testimony; but in considering the whole testimony we do not think that it must be inferred that the fact that the city had got to have it, and that its necessities rather than the market value of the property—which is the measure of the landowner's compensation—was the sole standard upon which the witness in his opinion based his estimate above that which the court said the jury could not go in its award of compensation.   We should not be too finical or criticise with too much nicety the language of this witness, but endeavor to consider its import upon the foundation he had laid for his opinion with a reasonable degree of liberality.   If the last question propounded, which was evidently considered the crucial test of his qualification to give an estimate by the court, had been "was the fact that the city needed it as a water supply for the people of Ely," instead of that "the city must have it for the water supply for the city," etc.—and, we think, taking the testimony all together, that the former was what might have been understood by the witness—an affirmative answer thereto would have fairly embraced elements affecting the general market value of the property to all persons or corporations who would or might be likely to purchase the same, instead of the peculiar necessity for the municipal improvement, which gave the selection of this particular piece an enhanced value to the city by reason of its location rather than its available attributes for a water supply.

There is no important difference in the rule adopted by the courts as to the true measure of compensation where land is taken in invitum. As held in a leading case in the United States Supreme Court: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such case must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted? * * * Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated. So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but as a general thing we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." Boom Co. v. Patterson, 98 U. S. 403. See also Railway Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792; Currie v. Waverly, 52 N. J. L. 381, 20 Atl. 56; Alloway v. Nashville, 88 Tenn. 512, 13 S. W. 123.

In the same line this court has held that a person is entitled to the fair value of his property for any use to which it is adapted, and for which it is available, and for which it may be sold. He is entitled to the value of his property for any use to which it may be applied, and for which it would ordinarily sell in the market, whether that use be one to which it is presently applied, or some other to which it is adapted. Any evidence is competent, and any fact proper to be considered, which legitimately bears upon the market value of the property. King v. Minneapolis U. Ry. Co., 32 Minn. 224, 20 N. W. 135. And further it was said in this case, that by market value of property is meant what purchasers generally would pay for it; not "what men would pay who had no particular object in view in purchasing, and no definite plan as

to the use to which to put it. The owner has a right to its value for the use for which it would bring the most in the market."

We cannot adopt the view of counsel that the course pursued by the trial court is justified by the previous decisions of Stinson v. Chicago, St. Paul & M. Ry. Co., 27 Minn. 284, 6 N. W. 784, or Union Depot v. Brunswick, 31 Minn. 297, 17 N. W. 626. In the former case a witness was not allowed to give the land's value for railroad purposes, who had said that "I don't think that my life has been sufficiently spent with railroads to justify me in saying what it would be worth for railroad or any other [than building] purposes." But this court did not hold that the general use to which railroads might adapt the property was not a proper consideration to be taken into account in appraising its value. The point decided went upon the showing as to the qualifications of the witness, and was not, as here, the basis of an actual order limiting the amount of recovery.

In the latter case the proceeding was to condemn land for railway purposes for a particular railroad from one place to another in the city of Stillwater, and a witness was asked and allowed to answer the question, "Is there any other route by which connections can be made between the lower depot and the upper, except across this land?" to which the answer was, "Not that I know of," which was held to be error. The court goes no further in this case than to hold, in reversing the court below, that the peculiar difficulties of extending the line north of the lower to the upper depot, which interfered with its construction, and made the use of a certain route requisite, did not fairly tend to show the market value of the property, or even its general fitness for railroad purpose, but made the exclusive necessity of use of the land appropriated an essential and distinctive criterion in determining the measure of damages.

But in the case at bar it is contended, and we think properly so, that the necessity of the city or the people of the city for a water supply might be considered as an element of its value, and does not distinctly involve such exclusive requirement for the land by the city as would make the excluded estimate depend entirely upon its special necessities therefor, based upon its own peculiar situation relative to the land taken, rather than to a legitimate use to which it might be adapted by any person or corporation similarly situated or desiring to engage in

the same business. If respondent thought the estimate of the witness, in connection with his entire testimony, had embraced improper elements of judgment, he could have protected the city from any possible injurious effects by securing instructions that would have limited its application to the correct rule which was involved in the answer to such an extent that weight would have been given to it. Ordinarily the admission or exclusion of opinion evidence, where it is not of a determinative character, is not regarded as sufficient to justify a reversal; but in this case such exclusion was regarded by the court as justifying its restriction to the amount of recovery, and was prejudicial.

Order reversed, and new trial granted.