LOUISA J. TRACY, ET AL., V. THE CITY OF MT. PLEASANT, IOWA,
ET AL., Appellants.

**Eminent domain:** VALUE OF WATER SUPPLY:   EXPERT EVIDENCE:   QUAL-
1  IFICATION OF WITNESSES.   A witness called to give the value of a
water supply on land sought to be condemned for that purpose, who
resided in another state and had there served as director of a
water supply survey, had studied chemistry and seen the wells in
question, but was not shown to be familiar with local conditions or
to be advised concerning other available water supplies, and who
stated simply that he was generally acquainted to a certain extent
with the market value of water supplies, was not competent to state
the value of the supply in question.

**Same:** VALUE OF PROPERTY:   EVIDENCE.   In the condemnation of prop-
2  erty its value at the date of appropriation should be ascertained, but
it is competent to show the various elements entering into its value.
Thus in condemnation of land for the purpose of supplying a city
with water it was proper to show any distinct value which the land
had for other purposes, not for the purpose of fixing the recovery,
but to disclose its real character in support of the estimated values
by the witness.

**Same:** VALUE OF PROPERTY: EVIDENCE. The necessity for or convenience of the property sought to be condemned cannot be shown for the purpose of exacting an unfair award, but the owner may always show its adaptability to the purpose for which it is sought to be taken.

**Same.** Evidence of the value of property sought to be condemned for the specific purpose for which it is to be used is also admissible; but this rule does not permit of speculative evidence based upon the necessities of plaintiff or what he could afford to give rather than do without it.

**Same.** The fair, reasonable value of land to be appropriated by a condemnation proceedings is the ultimate issue, which is to be determined from all the facts naturally affecting its value in the estimation of purchasers generally; and in condemning land for a city water supply it was competent to show that it was part of a water reservoir, and therefore generally regarded more valuable than it would otherwise be.

**Same.** A witness may be asked on direct as well as cross-examination the purpose for which he thinks the property sought to be condemned is available, and of his idea of its value for that purpose.

**Same.** Every fact concerning property likely to affect its value favorably may be shown by the owner; for its value for a specified purpose could not be greater than its value generally.

**Same:** ADMISSION OF EVIDENCE: DISCRETION. Where the adaptability of land to the particular use is questionable, evidence of its value for such use is admissible, and if the property is found not suitable to the purpose the evidence can be disregarded; but if there is no dispute as to its adaptibility then ordinarily only evidence of its general value should be admitted, although admission of its value for the particular use would rarely be an abuse of discretion.

**Same.** The admission of competent evidence as to the value of property condemned for a particular purpose is not erroneous simply because admitted on direct rather than cross-examination.

**Same:** QUALIFICATION OF WITNESS. It is not essential to the qualification of a witness to give his opinion of the value of property, that he be familiar with its value for all purposes. If he knows its value for one or more purposes he is qualified to speak.

**Eminent domain:** EVIDENCE: VALUE: DISCRETION. The adaptability of property for the purpose for which it is condemned may be shown;

and whether its value for such purpose may be separately shown depends upon the particular facts and is a matter of discretion.

**Same:** PROOF OF TITLE.  Where the city alleged in condemnation proceedings that the land involved belonged to certain parties as owners, it was not necessary for such owners to prove title.

*Appeal from Henry District Court.*—HON. W. S. WITHROW, Judge.

TUESDAY, MARCH 24, 1914.

ACTION to condemn certain land to the use of Mt. Pleasant, to supply that city with water and fire protection.  The city appeals.  *Affirmed* on condition.

*James Hourihan,* City Solicitor, and *J. C. McCoid,* for appellant.

*W. F. Kopp* and *John J. Seerley,* for appellees.

LADD, C. J.—This is a proceeding to condemn certain land for the use of the city of Mt. Pleasant in supplying water and affording fire protection to its people.  The application therefor alleged this to have been insufficient, and that, "in pursuance of said objects, the city of Mt. Pleasant, Iowa, through its city council, finds that it is necessary to procure or acquire, by purchase or condemnation, for the purpose of obtaining a sufficient water supply and adequate fire protection; that the said city desires to make some extensive improvements to obtain a sufficient supply of water, and also to construct reservoirs for the purpose of obtaining an adequate fire protection, and in pursuance of said necessity requires the following described real estate" (describing it) ; that the city had been unable to acquire title thereto by purchase; that Louisa Tracy owned eight-twelfths thereof, and the other plaintiffs one-twelfth each, and prayed that the damages to each occasioned by the taking be assessed; "that the said jury assess the damages of

the real estate only, not taking into consideration any of the improvements thereon which belong to the city of Mt. Pleasant, Iowa.'' The tract sought to be taken consisted of two acres, which had been made use of by the city under lease and was part of a farm of between sixty-seven and sixty-eight acres. The sheriff's jury assessed the damages at $1,350, and an appeal was taken by the owners to the district court, where the award was increased to $5,000.

Exceptions were saved to only two rulings on the admissibility of evidence, and any prejudice in one of these was obviated by subsequently eliciting the information sought. The

1. EMINENT DO-MAIN: value of water supply: expert evidence: qualification of witnesses.

evidence disclosed that there were three wells in the land sought to be condemned, and which the city had leased for some time, each about ten feet in diameter and twenty-two feet to sand, and from the bottom ''points'' about nine feet long (five-inch pipe with three-eighths inch holes covered with wire gauze) are let down about thirty feet, and through these the water is drawn to supply the city. Different witnesses estimated the value of the land to be from $250 to $300 per acre, and that the appropriation by the city of the two acres for the particular use proposed would diminish the value of the farm from $20 to $50 per acre, or not at all.

E. E. Bartow, who had been director of the Illinois water survey for seven years, had been a professor of chemistry, and had studied in Germany, testified that he had seen the wells and pumping station; that the only way to locate sand or gravel below the surface and determine where water comes from was by test wells; that often a good well is near one that is worthless; that water is often found in gravel or sand beds, evidently in depressions beneath the surface; that assuming sand or gravel is reached at a depth of twenty-five feet, with hard impervious clay above, this would indicate water is collected therein from some distance (that is, ''500 yards or a couple miles or even farther''); that this can only be ascertained by experiment. The witness was then asked ''if he

was acquainted with the market value of water supplies."
The objection that this called for the value of a single quality
and not for the total value of the real estate condemned, and
that the competency of the witness had not been shown, was
overruled, but no exception was saved.    The answer was:
"In general, to a certain extent."    The witness then explained
that, "if these wells would produce an average of 70,000 gal-
lons during three months, they would produce the same
amount if operated at full capacity, and he was then asked:
"If these wells would produce during the three months in the
summer time a daily average of fully 70,000 gallons per day
of water, of pure water, which doesn't need to be filtered for
a city of about 4,000 people, what would you say was the
value of that water plant, the reasonable market value, ex-
cluding the machinery, simply the water supply itself?"    An
objection "on the ground that professor was not acquainted
with the conditions in Mt. Pleasant, and does not know whether
there was another water supply, does not know what the rates
are, or the demand or necessity for water, because there might
be a wholly different value to this water between Mt. Pleasant
and some place in Kansas or in Illinois; the market value
there might not be the same, and because it established the
value of the real estate by items; it is asking the opinion of
an expert on a state of facts which are not shown to exist"—
was overruled, and the witness answered: "$3,000 is a mini-
mum value.    It might go higher, depending on circumstances."
We are of opinion that the objections ought to have been sus-
tained.    In the first place, he was a nonresident, and was not
shown to have been familiar with local conditions, nor to have
had any information as to whether other water supplies were
available, or for what purposes other than those of the city
the water was available, or the extent the supply might be
controlled by acquiring the land sought to be condemned.
What his duties as director of the Illinois water survey were
was not disclosed, nor did it appear that his experience or

education qualified him to estimate water supplies generally or this particular one. He claimed to know the market value only "to a certain extent," which was entirely indefinite. His testimony was a mere guess as to what he thought the city ought to pay, and this could not be more forcibly illustrated than by his cross-examination, wherein he explained that there was "a strong probability that, by putting down wells six or seven feet from the city wells on the Tracy land, they would get the same water the city is getting.

Q. If they were able to pump our water from us, then what would be the value of our wells on this side in that tract from which we get our supply? A. It would depend upon which pumped the faster. Q. Suppose the people on the Tracy side pumped the faster and had a more powerful pump? A. You wouldn't get the water you needed. Q. Then our tract wouldn't be worth much? A. No, sir; it wouldn't. Q. The possibility of putting wells immediately over the line of this tract, just the same water-bearing area as ours, would depreciate the value of our tract a great deal? A. Just as you have destroyed the value of their land for water-bearing prospects now. Q. It would be the same on either side? A. Yes, sir. Q. You would say that little area was worth $3,000? A. Why, I should say that the city should control more land in the first place, and that there would not only be the possibility of having water, but also the danger of contamination from wells in the neighborhood. The city should not only control two acres, but ought to control even more than that; as far as your direct question goes, the flow of water into wells through sand is fixed according to the character of the sand and gravel. Water would flow into each one, as was testified this morning. With one well they get about as much water as they could from two. If the distance was greater, they would probably get more from two than they would from one, because of the fact that the water takes time to flow through the sand. That the right would be worth $3,000 if the city could enjoin other people from interfering with their water, and would be based upon the city's right to prevent any one else from taking any of the water. The value is fixed upon the hypothesis that the city should make a contract or ar-

rangement that the water should not be taken away, and will get as much water as they propose to get. Q. But without that arrangement, without that assurance, it wouldn't have the same value? A. Evidently not. That if the city had to divide with any one it would be worth half that much, because the city has the right to condemn land, and could condemn this further. Q. But suppose we didn't have the money to pay for it, and couldn't condemn it? A. I am afraid the city would be in trouble. The fact that the Inglebright well lowered the Tracy well, and pumping at the well south of the big Tracy pond lowered the Tracy well, it would indicate that the water was one continuous body across there, was a stratum.

That in figuring the value at $3,000, he figured it on the theory that the city would control sufficient land to control the water supply. He based his value partially on the fact that the city should control enough land to control the water supply and eliminate contamination. He fixed his value on the fact that the city could get that much water and be assured that much water, without regard to the number of acres of surface they might control. "I mean they should be assured there would be no interference of the water supply and have such a control as there would be no pollution of the water supply. Q. Of course, the water being only three or four feet from the line, we couldn't assure ourselves of that protection, either from the theft of the water or from pollution? A. No, sir. But some arrangement could be made to protect the city."

There was no motion to strike his estimate of value following his cross-examination, but this disclosed conclusively that his opinion was based on a state of facts that did not exist and with his direct testimony that his estimate of value was not entitled to the slightest consideration as evidence of the damage plaintiff would suffer from the appropriation of the land for the purposes contemplated. The only testimony furnishing a basis for assessing the damages at more

than $2,000 was that of this witness, and all allowed above that amount necessarily was excessive.

Counsel for appellant also contend that, in any event, testimony of the value of the water supply was not admissible: First, because not constituting a proper measure of damages; and, second, for that it involved the value to the city for the use for which it was being condemned.

2. SAME: value of property: evidence.

While property to be condemned is to be measured by its value as it was at the date of its appropriation, proof of all the acts relating thereto ''is admissible, not as affording a measure of recovery, but as tending to disclose the real character and condition of the property, and support the estimates of values given by the witnesses. Generally speaking, the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale, and all other facts which would naturally influence a person of ordinary prudence desiring to purchase. . . . In this estimation the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property, for any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use.'' Ranck v. City of Cedar Rapids, 134 Iowa, 563. Numerous authorities are there cited which amply sustain the rule and illustrate its application. It is said farther on that ''the value of the property for any special use for which it is fitted or adapted may always be inquired into.'' If, then, the water supply had any distinct value which might aid in measuring what price should be exacted for the property condemned, evidence thereof was admissible. The water was extracted in the

manner described from the sand or gravel below, and, as there was no evidence to the contrary, must be regarded as percolating. *Barclay v. Abraham,* 121 Iowa, 619. As said in that case: "Water moves so readily from one place to another that any definite portion of it cannot be said to be the property of the owner of the soil until in some way reduced to control." For this reason it has been denominated "a mineral *feræ naturæ*." *Natural Gas Co. v. De Witt,* 130 Pa. 235 (18 Atl. 724, 5 L. R. A. 731) ; 3 Farnham on Waters, section 935. Undoubtedly the extraction of it from one locality may have the effect of drawing it from another even far beyond the land where this is done, but, upon being brought under control legally, it is so far within the dominion of the person or corporation so doing as to be reduced to ownership. What was meant by the question was not the value of the water itself alone, as seems to be assumed by counsel for appellant, but the facilities and opportunity to draw the amount of water from the wells, including these, and the fact that water, from whencesoever it came, could be procured there. If the water supply, as thus understood, could be separated from the land and had a distinct value, as have ordinary minerals, possibly this might be shown. *Seattle & Montana Ry. Co. v. Roeder,* 30 Wash. 244 (70 Pac. 498, 94 Am. St. Rep. 864), and cases cited therein; *Ranch v. City of Cedar Rapids, supra.* As the facilities and opportunity for the water supply could not well be separated from the land, this should have been included in propounding the inquiry. Was it permissible even then to show the market value, including the land, for the particular use for which it was to be condemned?

While the necessity or convenience of the city may not be considered for the purpose of exacting payment of more than the fair value of the property sought to be condemned,

3. SAME: value of property: evidence.

the convenience and availability for use in supplying water for the city was a material consideration in fixing its value. Such was the rule laid down in *Ranch v. Cedar Rapids, supra,* and

there seems no tenable ground for not applying it here. That the owner may show that his property is peculiarly adapted for the particular purpose for which sought to be taken is established by the overwhelming weight of authority. *Mississippi, etc., Boom Co. v. Patterson,* 98 U. S. 403 (25 L. Ed. 206); *Brown v. Forest Water Co.,* 213 Pa. 440 (62 Atl. 1078); *Currie v. Railway Co.,* 52 N. J. Law, 381 (20 Atl. 56, 19 Am. St. Rep. 452); *Little Rock Junction Co. v. Woodruff,* 49 Ark. 381 (5 S. W. 792, 4 Am. St. Rep. 51); *In re Application Thos. Gilroy, Commissioner,* 85 Hun, 424 (32 N. Y. Supp. 891); *In re Daly, Commissioner,* 72 App. Div. 394 (76 N. Y. Supp. 28); *McKinney v. Nashville,* 102 Tenn. 131 (52 S. W. 781, 73 Am. St. Rep. 859).

Moreover, the weight of authority is to this effect: That proof properly may be received of the value of the property for the specific purpose for which dedicated. If its value for any other purpose may be shown, as seems generally to be held, there is no ground for excluding it, when the purpose is that designed by the party seeking to condemn. *Johnson v. Railway,* 111 Ill. 413; *Cohen v. Railway,* 34 Kan. 158 (8 Pac. 138, 55 Am. Rep. 242); *Webster v. Railway,* 116 Mo. 114 (22 S. W. 474). As to whether he may go farther and prove its market value for such purpose, the decisions are in conflict. The earliest case on the subject appears to be *Young v. Harrison,* 17 Ga. 30, where a site for an abutment of a toll bridge was condemned, and it was held that: "The value estimated should have been the value at the time the property was taken, what it should then sell for as a bridge site, taking into consideration the number of other lots in the vicinity belonging to other persons, which might be used for such purpose, and the probable value of the bridge to its owners when it should be erected." But the land previously had been appropriated, so that it was then in use for such purpose. See, also, *Harrison v. Young,* 9 Ga. 364. The case is cited with approval in *Mississippi & Rum River Boom Co. v. Patterson,* 98 U.

4. SAME.

S. 403 (25 L. Ed. 206), where the jury assessed the damages
at $9,358.33, and found it of the value, aside from boom
purposes, of $300, and the court held that the desirability
of the portion of the islands sought to be appropriated was
a circumstance which the owner had the right to insist upon
as an element in estimating the value of his lands.  Whether
its value for that particular purpose might be shown on the
trial was not decided, but it was definitely determined by
the two verdicts, and of course there must have been evi-
dence upon which to base these.  In *Conan v. City of Ely*,
91 Minn. 127 (97 N. W. 737), there was a spring on the
land from which the city proposed to obtain a water supply.
The trial court was held to have erred in not allowing the
jury to take into consideration the special value of the prop-
erty as enhanced by the water supply from the spring, say-
ing that "the necessity of the city or the people of the city
for a water supply might be considered as an element of its
value, and does not distinctively involve such exclusive re-
quirement for the land by the city as would make the
excluded estimate depend entirely upon its special neces-
sities therefor, based upon its own peculiar situation relative
to the land, taken rather than to a legitimate use to which it
might be adapted by any person or corporation similarly
situated or desiring to engage in the same business."  In
*Spring Valley Water Works v. Drinkhouse*, 92 Cal. 528 (28
Pac. 681), the purpose of the condemnation was for use as
a reservoir site.

A witness qualified to answer was asked: "Do you
know what the value of the land is down there for reservoir
purposes?  Have you any means of knowing the value of
this land for reservoir purposes?"  An objection as irrelevant
and incompetent was sustained, and, in declaring the ruling
erroneous, the court said: "The question is thus presented
whether, assuming that the land sought to be taken was
specially valuable for the purposes named, it was relevant
and competent to show such value."  There is undoubtedly

some conflict in the authorities as to the admissibility of questions put in this form; but we think the point was decided in favor of the admissibility of such evidence in the case of *Land & Town Co. v. Neale,* 78 Cal. 63 (20 Pac. 372, 3 L. R. A. 83), and in the same case on a second appeal to this court, 88 Cal. 50 (25 Pac. 977, 11 L. R. A. 604).

Nor would this rule, as supposed by respondent, justify the admission of speculative opinions based upon the necessities of the plaintiff, or what the plaintiff could afford to give for the land rather than to do without it. If it should appear, during the course of the examination, that a witness had given an opinion as to value formed upon any such considerations, it would be the duty of the court to strike such opinion evidence out, as resting upon an illegal and improper basis.

The rule is that the owner is entitled to the market value of his land, to be determined in view of all the facts which would naturally affect its value in the minds of purchasers generally, which necessarily makes it proper to consider for what purpose it is most valuable. "Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers, may be considered." *Russell v. Railway Co.,* 33 Minn. 213 (22 N. W. 380). If, therefore, the land sought to be condemned in this action by reason of its situation, and because it is part of a basin adapted for reservoir purposes, would be regarded as more valuable by purchasers generally than if it did not possess such advantage of location and adaptability for use as a reservoir, the defendant should be permitted to show its value with reference to such facts by the testimony of competent witnesses; and, as said in *Land & Town Co. v. Neale,* 78 Cal. 69 (20 Pac. 375, 3 L. R. A. 83), this is not in reality any departure from the rule which requires the evidence of value to be confined to what the property is worth in the market, having regard to the most

valuable use to which it may be devoted. The court there said: "What is done is merely to take into consideration the purposes for which the property is suitable, as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which, in a general sense, may be said to be the market value."

Two earlier cases were overruled in deciding *San Diego Land & Town Co. v. Neale*, 78 Cal. 63 (20 Pac. 372, 3 L. R. A. 83), where the court adjudged evidence of the value of defendant's property as a reservoir site rightly received, saying, in the course of the opinion:

The problem, then, is to ascertain what is the market value. Now, where there is an actual demand and current rate of price, there can be but little difficulty. But in many instances, as in the case before us, there is no actual demand or current rate of price, either because there have been no sales of similar property, or because the particular place is the only thing of its kind in the neighborhood, and no one has been able to use it for the purposes for which it is suitable and for which it may be highly profitable to use it. In such case, it has been sometimes said that the property has no market value, in the strict sense of the term. *Chicago & N. W. R. Co. v. Chicago & E. R. Co.*, 112 Ill. 607; *Lake Shore & M. S. R. Co. v. Chicago & W. I. R. Co.*, 100 Ill. 33; *St. Louis, K. & A. R. Co. v. Chapman*, 38 Kan. 307 (16 Pac. 695, 5 Am. St. Rep. 744). And in one sense this is true. But it is certain that a corporation could not for that reason appropriate it for nothing. From the necessity of the case, the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. This is not taking the 'value in use' to the owner, as contradistinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable, as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which, in a general sense, may be said to be the market value. And in such an inquiry it is manifest that the fact that the property has not previously been used for the purposes in question is irrelevant.

The Supreme Court of Tennessee in *Alloway v. Mayor, etc., of Nashville,* 88 Tenn. 510 (13 S. W. 123, 8 L. R. A. 123), while concurring in the view that the adaptability or availability of the property for different uses, including that for which it was being condemned, might be shown, decided that:

This does not mean that all capabilities are to be priced separately, and the aggregate put down as the true value, for they do not exist independently of each other, and cannot all be realized at the same time. Nor will it do to restrict the estimate to any one of them, because in one view that would exclude the other elements altogether, and in the other view it would tend to make the degree of benefit to the party appropriating and condemning for a particular purpose the real measure of value, which is never allowable.

And with reference to *San Diego Land & Town Co. v. Neale, supra,* the court observed that: "In that case it was held, distinctly, that it was competent to prove the value of land for a reservoir site, and to make that value the measure of damages, independent of any other consideration or element of value; and that, too, when the land sought to be condemned was in fact not the real site of the reservoir, but only necessary to contain back water from the dam below."

This interpretation, however, was repudiated on the second appeal of *San Diego & Town Co. v. Neale,* found in 88 Cal. 50 (25 Pac. 977, 11 L. R. A. 604), where the court said:

It was decided on the former appeal, and is the law of the case, that the value of the land for any special purpose may be taken into account as one of the elements tending to show its market value. The fact that the land is suitable for such a purpose, and a chance exists that it may some time bring an enhanced value therefor, has a tendency to increase its market value, and may properly be considered in determining what its present market value is. In this connection it is proper to say that the learned judge who

wrote the opinion in *Alloway v. Nashville*, 88 Tenn. 510 (13 S. W. 123, 8 L. R. A. 123), evidently misapprehended our decision in this case on the former appeal. We did not hold that the value of the land for reservoir purposes was a measure of damages, independent of any other consideration or element of value. On the contrary, the opinion distinctly states that the market value is to be the measure of damages, and that evidence of value for a special purpose is only to be considered as an element of the question. . . . In the Tennessee case the court, not having the record in this case before it, fell into the error of saying that 'in that case it was held that it was competent to prove the value of land for a reservoir site, and to make that value the measure of damages, independent of any other consideration or element of value.' The market value is the ultimate fact to be determined by the jury. If the land has a value for any particular purpose, its market value may be thereby enhanced. If its value for one purpose is to be excluded, why not for another? A vacant lot in a city cannot be condemned and taken at its value for agricultural purposes. If land which has been used only for pasturage contains valuable mineral deposits, it cannot be taken for public use without reference to what reasonable purchasers would, in the opinion of experts, be willing to give for it, taking into consideration the character of such deposits. The fact that the plaintiff wants the land for a particular purpose should not defeat the defendant in his efforts to show its market value by showing as an element its value for that particular purpose; and the fact that the plaintiff is the only person who has thus far offered to purchase is immaterial. The true distinction is that the demand of the plaintiff alone is not to be considered, exclusive of other considerations. It goes to make up the aggregate of demands, or probable demands, which is one of the elements of the inquiry.

See, also, *In re Application of New York, Lackawanna & Western Co.*, 27 Hun (N. Y.) 116; *City of Los Angeles v. Pomeroy*, 124 Cal. 597 (57 Pac. 585). The logic of the California cases, in view of the peculiar facts, seems unanswerable.

In *Sargent v. Inhabitants of Merrimac*, 196 Mass. 171

(81 N. E. 970, 11 L. R. A. [N. S.] 996, 124 Am. St. Rep. 528), compensation was sought for the taking of land from which a water supply was obtained, and the trial court refused to allow a witness to testify to its value therefor, and in the course of the opinion the court observed that:

The market value to which the petitioner was entitled was made up of the value in the market of the land, apart from its special adaptability for water supply purposes, plus such sum as the purchaser would have added to that value because of the chance that the land in question might be some day used as a water supply. *Moulton v. Newburyport Water Co.*, 137 Mass. 163. The underlying contention of the petitioner is that it is idle for the presiding judge to tell the jury that she is entitled to this added value because of the chance that her land may be used as a water supply, so long as the court refuses to allow her to show what additional sum a purchaser would pay by reason of that special adaptability; and that you do refuse to allow her to show that when you refuse to allow her to show the value of the land for the special purpose. Without question this evidence would have thrown light on the issue on trial. The objection to it was not that it was not relevant, but that it would or might involve the trial of collateral issues, and for that reason was incompetent; that is to say, if this evidence was admitted, the court would or might find itself necessarily involved in the trial of collateral issues which would confuse the minds of the jury and unduly protract the trial. Whether relevant evidence is or is not to be held incompetent on this ground depends upon the view taken of it by the presiding judge (*Yore v. Newton*, 194 Mass. 250, 80 N. E. 472), and is a matter which must be left largely to his discretion, although his decision is not necessarily final. See, for example, *Bemis v. Temple*, 162 Mass. 342 (38 N. E. 970, 26 L. R. A. 254). The petitioner relies principally upon the cases of *Cochrane v. Commonwealth*, 175 Mass. 299 (56 N. E. 610, 78 Am. St. Rep. 491), and *Conness v. Commonwealth*, 184 Mass. 541 (69 N. E. 341), where the opinion of an expert as to the value of mill sites was admitted upon the trial of petitions to recover compensation for land taken, in the first case for a sewer and in the second case for a park, although the land was not then used for a mill. . . . In our opinion, it is likely that the

minds of the jury would have been distracted if the presiding judge had admitted evidence of the value of the land taken for the special purpose for which it had been taken, and at the same time had told them, as he was bound to tell them, that nothing was to be added to the value of the land to which the petitioner was entitled by the fact that it had been taken for that purpose. In our opinion, the exception to the exclusion of this testimony cannot be sustained.

The inconsistency involved in excluding evidence of value of the land for a water supply, or because of its special adaptation therefor, and yet holding that the measure of damages should be "made up of the value in the market of the land apart from its special adaptability for water supply purposes, plus such sum as a purchaser would have added to that value because of the chance that the land in question might be some day used as a water supply," is pointed out in the annotation following the opinion in the American State Report. Of course the ultimate issue to be determined is, What is the fair and reasonable value of the land to be appropriated to the public use, plus any damage to the tract from which taken and the inquiry is, How shall this be best ascertained? and there is much to be said in favor of the proposition that this depends largely upon the discretion of the trial court.

Undoubtedly inquiry would be proper on cross-examination as to what purpose a witness thought the property available for and his notion of its market value for such purpose. If so, it would not seem that error might be predicated on permitting this to be drawn out on direct examination.

6. SAME.

Certainly every fact concerning the property which would likely place it in a favorable light before the jury might properly be shown by the owner, and, if its value for a specified purpose were proven, this could be no higher than his estimate of its value generally.

7. SAME.

If there were some question as to its adaptability or availability for the particular use, then evidence of its value therefor might well be admitted in order that, in event it be found not to be suited for such purpose, such value be rejected, otherwise considered. See *Little Rock, etc., Ry. Co. v. Woodruff*, 49 Ark. 381 (5 S. W. 792, 4 Am. St. Rep. 51).

8. SAME: admission of evidence: discretion.

But where its adaptability and availability for the particular purpose is undisputed, there is no controlling reason for a ruling by which other than evidence of the general value of the property sought to be condemned should be received, though receiving evidence of value for a particular use would rarely prove prejudicial or constitute an abuse of the large discretion exercised by the trial court in ruling on the manner of adducing testimony of this character.

Such testimony, whether drawn out by one party or the other, has probative force, and the mere circumstance that it was elicited on direct instead of cross examination would not constitute ground for declaring its reception erroneous any more than would declining to strike out proper evidence not responsive to any question on motion of the party other than the examiner of the witness. Were the inquiry directed to testing the credibility of the witness, or the like, the rule might be otherwise; but, when the fact elicited has a direct bearing on the issue being tried, it can rarely prove of much consequence whether elicited on direct or cross examination, and we are of opinion that there would have been no abuse of. discretion had evidence been received of the value of the property for water supply purposes.

9. SAME.

The situation, however, was such that nothing would be gained in so doing, for its value, estimated in the light of all purposes for which suitable, necessarily would include . that for any particular use, and as the jury would be less likely to be diverted into the consideration of the specific necessities of the city, is to be preferred. In other words, a witness, to

10. SAME: qualification of witness.

be qualified to testify to the market value of a property, need not be shown to have been familiar with its value for all purposes; it is enough if he knows what it is worth for one or more, and, being thus qualified, may testify to his opinion of its real value on the market.

Our conclusion is that the availability and adaptability of property for the purpose for which sought to be condemned may be shown, and whether its value therefor may be separately proven is a matter within the sound discretion of the trial court, and necessarily depends on the peculiar facts of each particular case.

11. EMINENT DO-MAIN: evidence: value: discretion.

II. The suggestion that the application was merely to condemn the two acres of land, without reference to the purpose for which to be used, is without merit, as is also the contention that the injury to the remaining portion of the tract ought not to have been considered.

It was not necessary to prove the title to the land in controversy, for the city alleged that it belonged to the plaintiffs, and the owners merely took it at its word. Exceptions to the instructions have been disposed of by what has already been said, though probably the source of the water supply and the nature of the owner's claim thereto may well be more specifically stated on another trial. The error pointed out related solely to the measure of damages by increasing the assessment to the extent of $3,000, and should the plaintiffs care to remit this amount, as of the day judgment was entered, the judgment as modified, with costs, may stand, otherwise it will be reversed, remittitur to be filed within thirty days.

12. SAME: proof of title.

*Affirmed* on condition.


DEEMER, WEAVER, and GAYNOR, JJ., concur. WITHROW, J., took no part.