DONALD J. CAMERON *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

Argued July 14, 1892. Decided Oct. 17, 1892.

**Judgment of Dismissal on the Merits.**

Where issues have been made by the pleadings in an action of ejectment, and thereafter judgment has been entered upon a stipulation of the parties that the action shall be dismissed "on its merits," it cannot be regarded as an ordinary statutory dismissal by consent of parties. Such judgment is upon the merits of the case.

Judgment in Ejectment—Right of Way.

On the issues in this action, as made by the answer and reply, it is *held* that the judgment in question amounted to nothing more than an adjudication that the present appellant was entitled to the possession of the disputed premises for right of way purposes only.

Eminent Domain—Damages to Land not Taken—Separate User.

In proceedings in condemnation the landowner is not entitled to receive compensation for the land actually taken, equal to its market value for a use or purpose wholly distinct and disconnected from the use and purpose to which the remainder of his land is applied, and at the same time receive compensation for damages which he claims result to the remainder by reason of the taking.

Mitchell and Vanderburgh, JJ., dissenting.

Appeal by The Chicago, Milwaukee & St. Paul Railway Company, from an order of the District Court of Mower County, *Farmer*, J., made February 13, 1892, refusing a new trial.

Donald J. Cameron owned a farm of four hundred and forty-five acres in Mower County. Two lines of railroad operated by the appellant had been constructed across this farm and the right of way for each acquired. One of these runs north and south and is called the "Iowa and Minnesota Division." The other runs east and west, and is called the "Southern Minnesota Division." These two lines cross each other on the farm, at a junction called Ramsey. June 17, 1887, the Railway Company commenced condemnation proceedings to acquire a tract of eight and a half acres, in triangular form, at the junction of these two lines of road, being east of the Iowa & Minnesota Division, and south of the Southern Minnesota Division, to be used for the construction of a "Y" track to connect the two lines. The commissioners appointed awarded $739.50, as compensation for the land taken and damages to the rest of the farm. Cameron appealed from the award, and on a trial in the District Court, the jury awarded him $2,500. The Railway Company appealed from an order denying a new trial, and the order was reversed by this court, on the ground that the jury were allowed to consider damages to the land west of the strip used as the right of way of the Iowa & Minnesota Division, the fee of which strip Cameron had never ac-

quired. *Cameron* v. *Chicago, Mil. & St. P. Ry. Co.*, 42 Minn. 75. On the second trial in the District Court, the jury awarded respondent a verdict of $1,800. From an order denying its motion for a new trial, the Railway Company appeals. The facts are stated in the opinion.

*Kingsley & Shepherd*, for appellant.

The court erred in charging the jury that if they should find that the highest value of the land taken was for use as a gravel pit, they might estimate damages to the rest of the farm. By insisting that the land taken was especially valuable as a gravel pit, respondent voluntarily separated it from the rest of his land so far as user was concerned, and he cannot claim damages to land not connected by either unity of user, or unity of adaptability, with the land taken. *Wilcox* v. *St. Paul & N. P. Ry. Co.*, 35 Minn. 439; *Peck* v. *Superior Short Line Ry. Co.*, 36 Minn. 343; *Koerper* v. *St. Paul & N. P. Ry. Co.*, 42 Minn. 340.

The court erred in not instructing the jury, as requested by appellant, that they could not consider damages to the land on the north side of the Southern Minnesota Division. The judgment in the ejectment suit was a complete bar to any further proceedings by respondent for the recovery of the land involved in that suit. *Thompson* v. *Myrick*, 24 Minn. 4; *McClung* v. *Condit*, 27 Minn. 45; *Thomas* v. *Joslin*, 36 Minn. 1; *Bazille* v. *Murray*, 40 Minn. 48. It was a determination of the title to the strip of land used as the right of way of the Southern Minnesota Division, in favor of the appellant. 1 Freeman, Judg. § 249; *Allis* v. *Davidson*, 23 Minn. 442.

*John A. Lovely*, and *French & Wright*, for respondent.

The respondent was entitled: (1) To compensation for the land taken equal to its market value for the use to which it could be most advantageously applied. *Boom Co.* v. *Patterson*, 98 U. S. 403; *King* v. *Minneapolis Union Ry. Co.*, 32 Minn. 224; *Russell* v. *St. Paul, M. & M. Ry. Co.*, 33 Minn. 210. (2) To compensation for damages to the residue of the land equal to the actual diminution of its market value for any reasonable use to which it might be put. *Wilmes* v. *Minneapolis & N. W. Ry. Co.*, 29 Minn. 242; *Winona &*

*St. P. R. Co.* v. *Denman,* 10 Minn. 267, (Gil. 208.) Because a portion of the land taken has a greater value for a particular purpose, namely, a gravel pit, the respondent is not prevented from claiming compensation for consequential injuries to the land not taken. *San Diego Land & Town Co.* v. *Neale,* 78 Cal. 63; *Doud* v. *Mason City & Ft. D. Ry. Co.,* 76 Iowa, 438; *Colorado M. Ry. Co.* v. *Brown,* 15 Col. 193.

The judgment in the ejectment suit did not have the effect to vest in appellant the title in fee to the strip of land occupied by the Southern Minnesota Division. The judgment was one of dismissal only, and cannot operate as a final determination on the merits. *Craver* v. *Christian,* 34 Minn. 397; *Andrews* v. *School District,* 35 Minn. 70; *Gummer* v. *Trustees of Omro,* 50 Wis. 247; *Lindvall* v. *Woods,* 47 Fed. Rep. 195; *In re Woods,* 143 U. S. 202. But if the judgment is a bar or estoppel, it is only so to the extent of an easement or right of way. It was not an adjudication that the legal title was in appellant.

Collins, J. This is an appeal from an order refusing a new trial, after a verdict for plaintiff on the second trial of an appeal from the award of commissioners in proceedings to condemn land for railway purposes. The principal facts, except such as bear upon the defendant's rights in and to the strip of land extending east and west, and used for the line of the Southern Minnesota division, appear in the opinion heretofore rendered on a former appeal, 42 Minn. 75, (43 N. W. Rep. 785,) and the alleged errors now presented for review pertain solely to portions of the charge to the jury.

For the sake of convenience, we will take up the third assignment of error at the outset. The court refused to instruct the jury, as requested by defendant corporation, that they could not award any damages on account of that portion of plaintiff's farm lying north of the strip of land before mentioned. This request was in part founded upon defendant's contention, that through a certain deed from plaintiff to it, and by means of the proceedings and a judgment entered in an action of ejectment brought by plaintiff and in which it was defendant, it had conclusively established its ownership in fee simple of this

strip, and as a consequence that plaintiff's lands were in fact, and physically, separated by an intervening fee. We are therefore obliged to consider the proof upon which this contention was based. Through a conveyance from Clark W. Thompson and wife, in the year 1871, plaintiff became the owner of certain lands adjoining and both east and west of the tract used for defendant's Iowa & Minnesota division, including the strip in question, on which the Southern Minnesota Company constructed a line of railway the same year. August 4, 1874, plaintiff executed and delivered to said company a deed of conveyance in which was described and conveyed a strip of land 100 feet wide, being 50 feet on each side of the center line of the track of said grantee, as then laid through and across two particularly described government subdivisions, part of plaintiff's farm, both *west* of the Iowa & Minnesota division. The grantee's track ran for a short distance across a corner of one of these subdivisions, but did not touch the other. As will have been noticed, the deed did not convey any part of plaintiff's land *east* of the Iowa & Minnesota division, on which the grantee had previously built its track. Later the defendant succeeded to the interests of the Southern Minnesota Company, since which time the east and west line has been known as its "Southern Minnesota Division." August 12, 1887, this plaintiff brought an action in ejectment against this defendant, alleging his ownership of, and right to possess, the strip of land now under consideration, and that defendant had appropriated it for railroad purposes wrongfully, and without having compensated him for it. As a defense to said action the defendant alleged the making and delivery of the aforesaid deed to the Southern Minnesota Company, and that it was the intention of both grantor and grantee to describe and to have thereby conveyed to the latter the strip of land, to recover possession of which the action of ejectment had been brought, and not a strip upon the west of the defendant's Iowa & Minnesota division, or on the particularly described governmental subdivisions. It was alleged that a mutual mistake had been made in the description, which should be rectified and corrected. The defendant demanded that in the same action the deed be reformed so as to conform to the intention of the parties thereto, and that plain-

tiff take nothing by his complaint. The plaintiff's reply admitted the delivery of this deed, but denied that a mistake of any kind had been made in the description. This suit in ejectment was pending when the present proceeding to condemn was first brought to trial in the district court, and also at the time of the former appeal to this court. September 2, 1890, the attorneys for the respective parties entered into one stipulation that the action in ejectment might be dismissed "on the merits," and another that defendant's costs and disbursements might be taxed at a certain sum. Thereupon a judgment reciting the stipulations was entered against the plaintiff for the amount agreed upon as defendant's costs and disbursements. The effect of this judgment is squarely involved in a determination of the third assignment of error, the appellant company asserting that the deed of August 4, 1874, supplemented by the result of the ejectment action, established its title in and right to occupy the strip of land then in litigation, and that plaintiff was not the owner, nor was he entitled to the possession, of the same, nor had he been since the date of his deed of August 4, 1874, long prior to the time his damages were assessed by the commissioners in the present proceedings, which was on July 21, 1887. If, to the deed and to the judgment, there must be given the effect claimed for them by appellant, the refusal of the court to charge as requested was reversible error, for that part of plaintiff's farm lying east of the Iowa & Minnesota division was distinctly separated by a tract of land not owned by him, and over which he had no easement. Plaintiff's counsel insist that the judgment only operated as a dismissal of the action. If this be its sole effect, a very prominent feature of the stipulation recited in the judgment as entered, that the action be dismissed "on its merits," must be totally ignored. It is obvious that neither party consented to an unqualified dismissal, such as is provided for in 1878 G. S. ch. 66, § 262, subd. 2, but that the consent was conditional. It was mutually agreed that the dismissal should be on the merits of the action, and the agreement cannot be disregarded. If nothing but an ordinary dismissal, it left the plaintiff at liberty to renew his action, as an action of ejectment, or in some other form, and his counsel virtually admit in their brief that he

retained no such right. If he did not, it was solely because of the judgment. Entered as it was upon the significant stipulation before mentioned, the judgment must be held to have been upon the merits, and not an ordinary statutory dismissal by consent of parties; and, from the peculiar state of the pleadings, there arises at once a question as to what were the merits and what was actually determined. Had the defendant corporation alleged that it held the legal title in fee, and by reason thereof had and was entitled to the possession, as against the plaintiff's claim of title in fee and right to possess, we are now unable to see why the judgment would not have been a conclusive bar to any further litigation of the same subject-matter by these parties, or their privies. See *Doyle* v. *Hallam,* 21 Minn. 515; *Bazille* v. *Murray,* 40 Minn. 48, (41 N. W. Rep. 238.)

The refusal of the trial court to charge as requested by the appellant would then have been erroneous, for a judgment upon the merits, with such allegations in the pleadings, would have estopped the present respondent from again asserting right or title of possession. But the answer in question was not in that condition. By means of its allegations in respect to the error and misdescription in the deed from this respondent, which error and misdescription it demanded should be corrected and reformed in that action, the appellant corporation qualified its previous assertion as to title, and admitted that, at most, it held an equitable title only, the legal title being in its adversary. Certainly the judgment of dismissal on the merits did not have the effect of correcting or reforming the erroneous description and deed, and, as a necessary result, the legal title to the strip of land still remains in this respondent; his premises east of the Iowa & Minnesota division being apparently but one tract. The judgment, conceding that it was on the merits, amounts to nothing more than an adjudication that the appellant company had such an interest in the land over which its road was constructed as to give it the right of possession for railway purposes,—an easement for the purpose for which it appropriated and used the same, namely, for right of way. The judgment seems to have been so considered, for upon the trial it was shown that for several years the railway com-

pany had permitted, and at times constructed and maintained, farm crossings over its tracks for the respondent's use and convenience. The court below did not err when it refused to give appellant's third request.

But we are of the opinion that there was reversible error elsewhere in the charge, as to the rule by which respondent's compensation was to be determined. His proofs were specially directed towards showing that the tract of land sought to be condemned was very valuable as a gravel pit, and that its greatest value was for use as such pit. The jury would have been justified by the testimony in concluding that it could be used more advantageously for such a purpose than for any other, and that its greatest value was for the gravel therein contained. If the jury so concluded, they could take the proofs in respect to its value for this special purpose as a basis for determining the amount to be awarded the respondent as compensation, and the court so charged. It went beyond this, and, in effect, charged that to this amount the jury might add such sum as the testimony showed the taking of the premises in question had injured and depreciated the remainder of respondent's farm. And on appeal, respondent's counsel contend that this was a correct exposition of the law; that their client was not only entitled to receive compensation for the acres actually taken, equal to their market value for any special or distinct purpose to which they might be applied, but that, in addition, he was entitled to be compensated for such damages as resulted to the residue of his farm by reason of the taking. Or, to put it differently, that the respondent, because to his advantage, might practically set apart this tract from the remainder of his farm by devoting it to a purpose distinct from and foreign to that of farming, and for such purpose have it valued, and then insist upon having it regarded as a part of the farm, that his damages might be increased. If the land under consideration was of greater value as a gravel pit, or, to illustrate, for an elevator or hotel site, than it was for agricultural purposes, the owner could so insist when the railway company attempted its appropriation. But this increased value attached solely because the tract was adapted to and capable of separate and independent use, and this use contemplated and re-

quired its segregation from the balance of the farm,—its appropria-
tion to an extraneous, more desirable, and hence more valuable pur-
pose. If by using the eight and a half acres as a gravel pit, or as
a building site,—other than for farm buildings,—its value could be
augmented, the respondent's compensation would be correspondingly
increased, because it was his right to have his damages assessed on
that basis, but he cannot be permitted to treat it as a separate and
disconnected tract of land exclusively devoted to a special use and
purpose distinct from farming, and at the same time regard it as a
part of his farm,—as still connected with his adjacent farming lands.
Assessing the damages by taking the value of the entire tract as a
gravel pit, which of course assumed its separation from the remain-
der of respondent's land, and also assessing the damages by reason
of its separation, was to some extent duplicating the damages. A
new trial must be had.

Order reversed.

MITCHELL and VANDERBURGH, JJ., (*dissenting.*) While the portion
of the charge referred to, if taken by itself, is apparently misleading,
yet, when considered in connection with the evidence and the re-
mainder of the charge, we do not think it amounted to prejudicial
error. The two uses, and the only two, for which it was claimed that
the land taken had any peculiar or special value, were as a gravel pit
and as a building site; and the only way in which it was pretended
or claimed that the taking would injuriously affect the value of the
balance of the tract was that it would deprive the farm of its only
desirable building site. But the court expressly instructed the jury
that the two uses (a gravel pit and a building site) were inconsistent,
and therefore it would not be proper or right for them to take both
into account in making up the damages. In view of this instruction,
which contains a proposition, the correctness of which would be evi-
dent to any layman on its mere suggestion, we do not think that the
appellant could have been prejudiced by the part of the charge held
in the opinion of the court to have been error.

We therefore think the order should be affirmed.

(Opinions published 53 N. W. Rep. 199.)