STATE, BY HENRY N. BENSON, ATTORNEY GENERAL, v.
TOBIAS HORMAN AND OTHERS.
JOSEPH VOGT, RESPONDENT.[1]

February 17, 1933.

No. 29,285.

A brief was filed on behalf of the state by *Henry N. Benson,* former Attorney General, *Harrison B. Sherwood,* former Assistant

[1]Reported in 247 N. W. 4.

Attorney General, and *Henry C. Stiening,* Special Assistant Attorney General.

Upon hearing of the case there was an appearance and argument on behalf of the state by *Harry H. Peterson,* Attorney General, and *John E. Katzmarek,* Assistant Attorney General.

*Paul Ahles,* for respondent.

STONE, Justice.

This is a highway condemnation case. After commissioners had awarded respondent Vogt $1,200 as the damage to his property, the state appealed to the district court, where a jury increased the award to $1,653.18. The state appeals from the order denying its motion for a new trial.

Mr. Vogt owns lots 7, 8, and 9, block 66, townsite of Richmond, in Stearns county. This proceeding arises from the establishment of a trunk highway across the lots, on which there is a deposit of sand and gravel usable and used by Mr. Vogt in the manufacture of cement and concrete products. This deposit and its value were much stressed by Mr. Vogt's witnesses, and their testimony was adopted by the jury as the basis of their verdict. We need not far explore the merits because there must be reversal for error.

■ The surface of the Vogt lots rises in a mound or knoll through which the new highway has made a cut about 15 feet deep. The excavation is a sidehill cut, the maximum depth of about 15 feet being at or near its northern side and the cross-section running down and out at or near zero on the south side. Except for a thin topsoil, the evidence for the landowner indicated that all of the contents of the cut consisted of valuable sand and gravel suitable for his business, and that the road not only deprived him of the use thereof, but also of the estimated quantity underlying roadbed and ditches.

The Northern States Power Company has a power line running parallel to the road. It has one pole on Vogt's property north of the road, on the right of way but just outside the cut. At this point the excavation seems to have attained its maximum depth of upwards of 15 feet. One of the witnesses for the landowner, Mr. Winter, testified that the lots, without the highway, "would be worth

from $1,800 to $2,000," but with the road "they are not worth anything now, because he cannot get any gravel." This was his testimony on direct examination. On cross-examination he made it plain that his valuation was "for his purpose," that is, for the purpose to which they were then put by the owner.

He went on to explain also that his estimate of damage was based in part upon the fact that the power company's pole was located on the right of way. The idea was that the presence of the pole made it necessary to leave around its base a considerable mound of gravel, quantity not shown, which was thereby made unavailable to the owner. He said, frankly, that he was basing his estimate of the damage "on the fact that the light post is there." Asked whether that was his "main consideration," he answered in the affirmative, because, as he explained further, he, Vogt, could not get out the gravel which would have to remain in order to give the pole necessary support. Based on this development of cross-examination, the state moved that the testimony of Winter as to damage be stricken upon the ground that it was "based upon the presence of the electric light pole being there * * * upon the danger that might accrue to persons working in the pit by reason of the falling of the light pole in case gravel is removed." The witness had indicated that he gave that element of danger some weight. There was other opinion evidence for respondent somewhat open to the same objection. The witnesses seemed to consider the presence of the power pole productive of an added and substantial element of damage chargeable to the state.

Needless to say that if the pole added anything to the damage, it was chargeable to the power company rather than the state. Winter's testimony was so far put upon that erroneous basis that the motion to strike should have been granted, there having been no effort on redirect to have the witness express an opinion based upon proper elements of damage to the exclusion of the improper one which he stressed so much. To what extent the power pole figured in his estimate of damage was nowhere made to appear. The refusal to strike all of his testimony as to damage was error for which there should be a new trial.

■ Other matters complained of need but a passing reference. We find no merit in the assignment of error based upon the supposed misconduct of counsel for respondent. He did go into the fact that one or more of the state's witnesses had been testifying for the state on similar occasions and inquired as to the amount of their compensation. That was legitimate cross-examination, the extent of it to be limited only by the sound discretion of the trial judge.

■ The difference between the fair market value of the property before construction of the road and its fair market value after was the measure of damages, excluding, of course, any elements that might have been added by the independent action of a third party, such as the location of the power line pole outside the limits of the road proper but yet inside the right of way line. That there was a valuable deposit of sand or gravel, or anything else, on the property, the use of which would be interfered with or prevented, was a factor for consideration. The value of the property for plaintiff's peculiar use was not determinative. But evidence of the deposit of sand and gravel and that the market value was thereby enhanced was competent. Cameron v. C. M. & St. P. Ry. Co. 51 Minn. 153, 160, 53 N. W. 199; Conan v. City of Ely, 91 Minn. 127, 97 N. W. 737.; 20 C. J. 769; 10 R. C. L. 129. It was not held otherwise in C. M. & St. P. R. Co. v. Mason, 23 S. D. 564, 569, 122 N. W. 601. There an offer to prove the cubical contents of a gravel deposit in nearly 35 acres of land had been rejected. The thing offered was an estimate, and it was held "speculation only * * * no true or reasonable rule as to the value of the land." But that does not go to the point of holding that evidence is incompetent which shows not only the presence of a valuable deposit and that it has a unit value, but also what that value is and the quantity to which the value is to be applied. The presence of the deposit alone is relevant, as is also its quality and the market value and demand, if any. There can be no competent proof of quantity without ascertainment of extent and boundaries sufficient to enable someone to make an estimate of cubical contents with a reasonable degree of accuracy.

In this case an estimate of contents was admitted, whether properly or not we do not determine in view of the necessity for a new trial. Ordinarily soundings are necessary to ascertain the depth of such a deposit. Sometimes there are such surface indications on hillsides or in cuts as to make soundings unnecessary. Whether such indications were or are present in this case, and whether an estimate of cubical contents based thereon should be admitted in evidence, is something that had best be left for determination anew if the case is retried.

For the error first considered the order denying a new trial must be reversed.

So ordered.

OLSEN, Justice, took no part in the consideration and decision of this case.

WILSON, Chief Justice (dissenting).

I dissent. The apparent confusion of the witness went only to his credibility. The jury knew the facts.

HOLT, Justice (dissenting).

I concur in the dissent of the Chief Justice.