STATE, BY MILES LORD, ATTORNEY GENERAL,
AND HIS SUCCESSOR, WALTER F. MONDALE, v́.
THOMAS J. CASEY AND OTHERS.
MAPCO SAND & GRAVEL COMPANY, RESPONDENT.

115 N. W. (2d) 749.

June 8, 1962—No. 38,426.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Russell F. Sorenson,* Special Assistant Attorney General, for appellant.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court which denied the motion of the appellant, State of Minnesota, for a new trial.

This case involves the condemnation for highway purposes of a strip of land owned by respondent Mapco Sand & Gravel Company. Prior to this action Mapco was the fee owner of 75.58 acres of land running along Xerxes Avenue in Edina and Bloomington. The tract was divided by West 78th Street (Highway No. 100), the right-of-way for which had been acquired by the state in 1926. That right-of-way varied from 80 to 110 feet in width, and the paved portion was about 24 feet wide.

From 1948 until the fall of 1953 Mapco used that part of its tract consisting of about 30 acres north of the highway as a gravel pit. Certain buildings used in conjunction with the mining of the gravel were constructed upon the north tract. By that time the mining on the north tract reached a level with Xerxes Avenue and Mapco ceased mining that tract. In 1954 it applied to the State Highway Department for permission to build a tunnel under the road which crossed its land. A permit was given authorizing the building of a tunnel and conveyor to allow the moving of gravel from the south tract, amounting to about 44 acres, to the north tract where it was to be processed. Mapco's mining operations from then on were confined to the south tract, which at the time of the trial was sufficiently elevated to allow, in the opinion

of its owners, about 7 years more of mining before it would be level with Xerxes Avenue.

To provide room for a new freeway, the state brought condemnation proceedings to obtain a highway easement over 10.6 acres of Mapco's land in a strip about 550 feet wide which abutted the south edge of the old highway. It was proposed that the new freeway be about 40 feet below the level of the surrounding land. Commissioners were appointed in 1955 by the district court. On March 20, 1959, the commissioner of highways gave notice to Mapco to remove the conveyor system inasmuch as work was soon to begin on the new highway.

In their final report dated April 20, 1959, the court-appointed commissioners made an award of $148,000 to Mapco. The state and Mapco each appealed to the district court from that award. After a trial before a jury, a verdict was returned awarding Mapco $195,200.

The following testimony was introduced regarding damages which resulted from the taking: Harold D. Stafford, an officer of Mapco, testified that the reasonable market value of the whole tract, valued as one unit, was $650,000 on April 20, 1959, and that after the condemnation the value was $310,000, resulting in total damages of $340,000. However, the witness stated that those damages could be reduced to $150,000 by moving the washing plant of Mapco to the south side of the highway, where the latter intended to continue its gravel operations for about 7 years. To do this, however, would cost $120,000, which added to the reduced damage of $150,000 would make a total damage of $270,000.

Glenn Gullickson, a retired loan agent who had been engaged in real estate appraisals since 1913, testified concerning his valuation of that portion of the property which was zoned for commercial use—approximately 1,000 feet deep on the south side of 78th Street and 400 feet deep on the north side of 78th Street. He stated that the value of this land on April 20, 1959, was $239,900. He estimated the value of the remainder of this zoned strip after the taking to be $112,700, making a total damage of the zoned portion of $127,200. Mr. Gullickson did not attempt to estimate any damages which might result to the remainder of Mapco's land. Another appraiser, Thomas S. Maple, agreed with the figures given by Mr. Gullickson.

Dewey Newcombe, a professional real estate appraiser who testified on behalf of the state, valued the south tract for commercial purposes, disregarding the gravel operations, at $179,500 before the condemnation and $134,000 afterwards, or a total damage to that portion of $45,500.

Another realtor who testified for the state, Frederick H. Chute, estimated total damage to Mapco resulting from the taking at $47,000. He stated that the highest and best use of the south tract would be for commercial purposes, in the zoned area, though he admitted that he had not considered the possibility of further gravel operations.

After this testimony as to value, Mapco was permitted to reopen its case and Russell C. Smith, an appraiser, gave further evidence of value. He valued the entire tract as one unit for use in the mining operation now and eventual sale after 7 years as commercial building sites. He estimated the value before the taking at $611,700, and the value afterwards at $294,700, making a total damage of $317,000.

The state has assigned eleven errors which raise the following legal issues: (1) May the owner of the fee underlying a highway easement be awarded damages for the closing of a passageway under the highway constructed pursuant to a permit from the state when improvements to the highway make it necessary to close the passageway? (2) May an owner in a condemnation proceeding be awarded compensation for the part taken on basis of use as building sites and damages to remainder on basis of use as gravel pit? (3) Is an award of damages based on a plan for using the land for gravel operation with 7-year deferred use as building sites improper as being speculative and as going to plans and intentions of the owner? (4) Does "reasonable diligence" in mitigation of damages require that a person do only what he has an absolute right to do? (5) Where the case has been reopened in chief, conditioned upon a limitation by the court of the number of experts to be allowed, is it an abuse of discretion to disregard the condition? Where no excuse, other than inadvertence of counsel, is offered for reopening the case in chief, does the reopening constitute an abuse of discretion?

■ Where a portion of a tract of land is taken in condemnation proceedings, the rule in this state is that damage is measured by the

difference in the market value of the entire tract before and after the taking. State, by Lord, v. Pahl, 254 Minn. 349, 95 N. W. (2d) 85, and authorities cited; see, 1 Bonbright, Valuation of Property, p. 422; 42 Minn. L. Rev. 106, 118. Any evidence is competent and any fact proper to be considered which legitimately bears upon the question of the market value of the property. Conan v. City of Ely, 91 Minn. 127, 97 N. W. 737; Regents of the University of Minnesota v. Irwin, 239 Minn. 42, 57 N. W. (2d) 625.

With these rules in mind, it is difficult to see why the closing of Mapco's tunnel would not be compensable under the record here. The market value of the property prior to the condemnation would undoubtedly include the value of the passageway. On the other hand, the market value after the tunnel was closed would be lower because the passageway would no longer be available for use in connection with the property.

The state claims, however, that the closing of the tunnel was merely an exercise of the state's police power and is not compensable, citing Cater v. Northwestern Tel. Exch. Co. 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, and 3 Nichols, Eminent Domain (3 ed.) § 10.211(2). See, Jahr, Eminent Domain, § 3. While it is sometimes difficult to distinguish between the power of eminent domain and the police power, the question is essentially one of degree. Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. ed. 322; 3 Stanford L. Rev. 303, 304. See Palmer, Manual of Condemnation Law, §§ 14 and 15, for Minnesota cases on both sides of the question.

The Minnesota Constitution since 1896 has provided that compensation must be paid whenever private property is "taken, destroyed or damaged for public use." Minn. Const. art. 1, § 13. Even though no land is taken, if damage to the property is extensive enough it will be regarded as an exercise of the power of eminent domain, as where all access to a highway is closed,[1] or where there is a substantial change in the grade level of the road.[2] It is clear that the closing of the tunnel

---

[1]Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; 18 Am. Jur., Eminent Domain, §§ 183, 388; 3 Stanford L. Rev. 304, 305.

[2]Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532; Berg

in this case was not mere regulation but was a taking which substantially reduced the market value of the Mapco property.

The state further argues, however, that Mapco did not possess any property right to the tunnel in question but merely used the tunnel at the discretion of the state. It points out that on the back of the permit which was granted to Mapco for the construction of the tunnel in 1954 was the following clause:

"If Highway Department shall make any improvements or change on all or any part of its R/W upon, over, under or along the trunk highway then and in every case the applicant herein named shall after notice from the Commissioner of Highways or his authorized agents proceed to alter, change, vacate or remove from trunk Highway R/W said works necessary to conform with said changes without cost whatsoever to the State of Minnesota."

It is well settled that when the state purchases or acquires an easement for highway purposes, the owner of the fee "retains a right to use the land for any lawful purpose compatible with the full enjoyment of the public easement." Town of Glencoe v. Reed, 93 Minn. 518, 519, 101 N. W. 956, 957, 67 L. R. A. 901; L. Realty Co. v. Johnson, 92 Minn. 363, 100 N. W. 94, 66 L. R. A. 439. As stated in 25 Am. Jur., Highways, § 156:

"The owner of the fee has a right to use the subsurface of the highway for any proper purpose incident to the use and enjoyment of the abutting premises, provided he does not thereby materially interfere with the enjoyment of the public easement. * * * The exercise of such right is subject, however, to such reasonable regulations as may be prescribed by the public authority."

The state can regulate the building of tunnels under highways, but when it restricts a landowner's use of the subsoil to such an extent that a tunnel becomes practically impossible, it must pay compensation therefor, for this then becomes a taking. 1 Nichols, Eminent

v. Village of Chisholm, 143 Minn. 267, 173 N. W. 423; Electric Short Line Terminal Co. v. City of Minneapolis, 242 Minn. 1, 64 N. W. (2d) 149; 13A Dunnell, Dig. (3 ed.) § 6650.

Domain (3 ed.) § 1.42. We, therefore, hold that, under the facts and circumstances of this case, the court properly allowed the jury to consider the closing of the passageway under the highway in computing damages.

■ The state questions whether the court erred in admitting testimony concerning use of the property both for gravel mining purposes and for commercial building sites. The witness Stafford testified that the highest and best use of the land taken was as commercial building sites, but he apparently valued the rest of the land as a gravel mine. The witness Smith valued the tract on the basis of use as a gravel mine for 7 years, after which it would be level with Xerxes Avenue and could be used as building sites.

The state relies on Cameron v. Chicago, M. & St. P. Ry. Co. 51 Minn. 153, 53 N. W. 199. We held in that case that the landowner could not value the land taken as a gravel pit and in addition claim damages to the rest of his farm for its severance by the taking. In other words, if the landowner had made a gravel pit out of the strip which was taken, that in itself would already have severed the farm, and he could not recover additional damages from the state for such severance.

In our opinion, this rule is inapplicable in the instant case. There was no showing here that if the strip taken had been used as building sites it would necessarily have severed the whole tract. On the contrary it would seem that Mapco could have continued mining the south tract with a conveyor belt going through the commercial strip to the north tract. See, Northern Pacific & M. Ry. Co. v. Forbis, 15 Mont. 452, 39 P. 571.

Moreover, the higher damages estimated by the witness Smith were not based on simultaneous uses at all, but upon a 7-year deferred use as building sites. If these are uses which a buyer on the open market would reasonably consider, then the testimony is admissible. Conan v. City of Ely, *supra*; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897; Olson v. United States, 292 U. S. 246, 54 S. Ct. 704, 78 L. ed. 1236. As stated by McCormick, *The Measure of Compensation in Eminent Domain,* 17 Minn. L. Rev. 461:

"\* \* \* evidence of the different advantageous uses to which the property is adapted in its present condition is admissible, and likewise any use to which the property might be put in the future ought to be considered, if such use is sufficiently practicable and probable as to be likely to influence the price which a present purchaser would give for it."

In our opinion, the testimony of both Stafford and Smith was directed toward uses which a reasonable buyer on the open market could foresee.

The state further cites the rule that uses which are peculiar to the particular plans and intentions of the present owner cannot be shown. Board of Education v. Heywood Mfg. Co. 154 Minn. 486, 192 N. W. 102. It is our opinion, however, as stated above, that the testimony in this case was directed toward uses which would be considered by any buyer of the property and was therefore properly received in evidence.

■ The state questions the action of the trial court in excluding certain evidence which tended to show that Mapco might possibly obtain permission to build a new tunnel under the new highway and that such a tunnel would lessen damages due to the severance.

This jurisdiction has adopted the rule that the landowner is not entitled to recover compensation from the state for damages which he could mitigate. State, by Lord, v. Pahl, *supra.* For example, Mapco introduced testimony that it could reduce its damages to $150,000 by moving the processing plant to the south tract, but it would cost $120,000 to do so. In that event, of course, the cost of moving must be added to the $150,000. McCormick, Damages, § 42.

However, though the landowner must exercise reasonable diligence to minimize his damages, the extent of the duty imposed by the rule depends on the facts of each case. State, by Lord, v. Pahl, *supra.* The claim of the state that further mitigation of damages might be obtained if Mapco built another tunnel under the new highway was speculative at best. Even if it would be physically possible to put a practical conveyor tunnel under a 40-foot depressed highway, such a tunnel could be constructed only on such terms as the state might reasonably impose.

25 Am. Jur., Highways, § 156. Whether testimony of possible mitigation under these circumstances should be allowed to go to the jury is a matter within the discretion of the trial court.[3] We cannot say, under the record here, that the court abused its discretion in excluding such evidence.

■ Finally, the state claims that the trial court committed error in allowing Mapco to reopen its case to put in further testimony regarding valuation. In addition, it is claimed that the court limited the number of witnesses and the scope of the testimony when it granted the motion to reopen, and that error was committed in the refusal to enforce these limitations.

Whether a party should be allowed to reopen his case after resting is a matter within the discretion of the trial court. 19 Dunnell, Dig. (3 ed.) § 9716. The trial court here stated that "this is an extremely important case to both of the parties," and on that basis decided that Mapco should be allowed to introduce further evidence as to its damages.

While it may be true that when a party seeks to introduce evidence out of order the court may impose conditions,[4] it is equally within the court's discretion to waive the conditions if it deems it necessary. Moreover, the state was afforded ample opportunity to call further experts if it felt they were necessary. Under these circumstances, we would not feel justified in reversing on this ground. Finding no other error in the proceedings below, the order must be affirmed.

Affirmed.

---

[3]Compare Hallada v. G. N. Ry. 244 Minn. 81, 92, 69 N. W. (2d) 673, 683, where we stated: "Although evidence in mitigation of damages is generally admissible in a personal injury suit, no arbitrary rule of evidence can be formulated which is applicable to all situations and much must be left to the sound discretion of the trial court."

[4]In Plummer v. Mold, 22 Minn. 15, 16, we stated: "To give any evidence of value, when on the rebuttal, rested not upon a right in the plaintiffs, but in the discretion of the court; and if it could exclude the whole of that kind of evidence, as it might have done, it certainly might exclude a part; and where to admit or reject evidence is discretionary with the court, it may exclude it, though not objected to."