## DAVID LERNER v. CITY OF MINNEAPOLIS AND OTHERS.

169 N. W. (2d) 380.

June 20, 1969—No. 41531.

*John C. DeMoss,* for appellant.

*Keith M. Stidd,* City Attorney, and *Jerome Fitzgerald,* Assistant City Attorney, for respondent city of Minneapolis.

*Fredrikson, Byron & Colborn* and *Terence M. Fruth,* for respondent Housing and Redevelopment Authority, city of Minneapolis.

*George M. Scott,* County Attorney, and *Floyd Olson,* Assistant County Attorney, for respondent County of Hennepin.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

NELSON, JUSTICE.

Plaintiff-appellant, David Lerner, commenced an action against the city of Minneapolis, the Housing and Redevelopment Authority in and for the city, and the County of Hennepin to enjoin said defendants, their successors, agents, and employees, and all others acting in aid or concert with them, from spending or contracting to expend further funds for plans, specifications, service, or construction of two one-way bridges over the east channel of the Mississippi River from Nicollet Island in replacement of the East Hennepin Avenue bridge.

After trial without a jury the lower court on June 19, 1968, held that plaintiff was not entitled to a temporary injunction or to a permanent injunction and that defendants were entitled to judgment in their favor. The court also thereupon vacated a temporary restraining order which had been issued April 17, 1968. Plaintiff appealed to this court from the order refusing to grant an injunction and vacating the temporary restraining order.

It appears from the record that in April 1964 the engineering department of the city became aware that the structural condition of the bridge over the east channel of the Mississippi River at Hennepin Avenue was in a deteriorated condition and was in

need of repair or replacement. The condition of the bridge was so bad that in April 1966 a 3-ton load limit was placed on the bridge by the city engineer, requiring bus and truck traffic to use different routes across the river.

The Roads, Bridges and Utilities Committee of the Minneapolis City Council held many meetings concerning the needed repair or replacement of the bridge. The Hennepin County Highway Department engineers considered 20 possible bridge plans for the replacement of the bridge, which James Tillitt, a structural engineer testifying for plaintiff, conceded could not be economically repaired. The Minneapolis Planning Commission recommended the construction of two one-way bridges to the city council and the council committee, and on April 18, 1968, the planning commission amended the comprehensive land-use plan of the city to provide for these bridges. On January 12, 1968, the city council by resolution directed the acquisition of certain parcels of land for bridge approaches for the north bridge of the two-bridge plan, and authorized the city and county engineers to proceed with final design plans for the bridges in accordance with the preliminary layout of the county engineer. On April 26, 1968, the city council, by resolution, appropriated $3,000 from the permanent improvement tax fund of the city for preliminary expenses in connection with the acquisition of the land for bridge access. Plaintiff introduced into evidence an alternative plan which he contends would result in substantial savings to the city if used and would not require the taking of any land.

When plaintiff brought this action, defendant Housing and Redevelopment Authority was in the process of preparing an urban renewal plan for Nicollet Island. That plan had not been adopted by the Housing and Redevelopment Authority's governing body or the city council, but did anticipate the construction by the city or county of a new bridge to Nicollet Island. The Housing and Redevelopment Authority played no part in the decisions on location, design, or construction of the proposed bridge project, although its proposed renewal plan contem-

plated the acquisition by the Authority of land to be used for approaches to the proposed bridge. However, because that renewal plan had not then been adopted by the Housing and Redevelopment Authority's governing board or the Minneapolis City Council, no steps had been taken by the Authority to acquire any land for bridge approaches, and the Authority's interest in the bridge project was limited to the possibility of future land acquisition for approaches and the contribution the city and county's expenditures for the project could make toward fulfilling the Federal requirement that there be a one-third local share of the total cost of a Federally financed renewal project.

After defendants rested, the court granted their motion to reopen the hearing and allowed them to introduce evidence of the actions of the city council and the planning commission. Plaintiff contends that it was error to do so.

Plaintiff also contends that the city of Minneapolis may not acquire land for a street right-of-way from the permanent improvement fund of the city. The trial court, however, found that the city was properly and legally authorized to acquire the right-of-way for access to the twin-bridges project, stating in a memorandum made a part of its order of June 19, 1968:

"* * * Consideration of all the provisions of the charter makes it clear that the permanent improvement fund may be used to purchase land for streets when direct purchase as distinguished from condemnation is the procedure elected to be followed by the City. It would be strange, indeed, if a different fund were required to be used when purchase rather than condemnation is the elected route for the acquisition of land."

It is the contention of defendants that the power of the city to acquire land for a public purpose is based upon the Minneapolis City Charter and Minn. St. c. 117. Minneapolis City Charter, c. 1, § 1, provides as follows:

"All that district of country in the County of Hennepin and State of Minnesota, contained within the limits and boundaries

hereinafter described, shall be a city by the name of MIN-NEAPOLIS, and all the people now inhabiting and those who shall hereafter inhabit the said district shall be a Municipal Corporation by the name of the 'City of Minneapolis,' and by that name may * * * *take and hold, lease and convey all such real, personal and mixed property as the purposes of the corporation may require, or the transaction or exigencies of the business may render convenient within or without the limits of such district* * * *."* (Italics supplied.)

The foregoing charter provision clearly indicates that the city has the right to acquire real estate for public purposes.

Minn. St. 117.01 states in part:

"The provisions of this chapter shall be considered supplementary to those provided by any municipality operating under a home rule charter and shall be available to all such municipalities even though a different procedure may be provided by local charter."

Minn. St. 117.42 deals with awards in condemnation proceedings for cities of the first class, such as the city of Minneapolis, and provides in part:

"When an award of compensation and damages shall be confirmed by the city council of any city of the first class in the state existing and governed under a charter adopted pursuant to the Constitution of the State of Minnesota, Article 4, Section 36, in any proceeding for the taking of property under the power of eminent domain, and not appealed from, and when the same, when appealed from, shall not be set aside by the court, the same shall constitute a lawful and sufficient condemnation and appropriation to public use of the land and property and rights in property for which compensation or damages are so awarded, *and the city council shall thereupon cause to be paid from the funds of such city to the owner of such property the amount awarded to each severally."* (Italics supplied.)

This statute clearly permits cities of the first class to pay for the acquisition of real estate through condemnation from any public funds. However, § 117.43 provides further guidance as to which municipal funds shall be used by cities of the first class for acquisition of real property:

"If any city of the first class shall in and by its charter have provided for the payment of awards of compensation and damages out of a particular fund, section 117.42 shall not apply thereto so as to change the fund out of which such awards shall be paid, as designated by the charter of any city of the first class."

Minneapolis City Charter, c. 10, § 4, provides in part:

"Whenever an award of compensation and damages shall be confirmed by the City Council, and not appealed from, and whenever the same when appealed from shall not be set aside by the Court, the same shall constitute a lawful and sufficient condemnation and appropriation to public use of the land and property and rights in property for which compensation or damages are so awarded, *and the City Council shall thereupon cause to be paid from the permanent improvement fund of said city to the owners of such property the amount awarded to each severally.*" (Italics supplied.)

Thus, when the city of Minneapolis acquires property by condemnation, under this charter provision the money for the property so acquired shall be paid from the permanent improvement fund. Evidence was presented to the trial court that the city council at the time of the hearing contemplated paying the money necessary for acquiring property needed for right-of-way access to the proposed new bridges from that fund. The indication for the use of the permanent improvement fund was given by action taken by the Minneapolis City Council April 26, 1968.

Plaintiff's contention before the trial court was to the effect that the city was proceeding improperly to purchase the parcels of land needed for abutting access for the bridges to be con-

structed. It appears that after the entry of the order denying plaintiff injunctive relief the city instituted condemnation proceedings in Hennepin County District Court (File No. C-828) to acquire the necessary parcels for the bridge abutments under the provisions of Minn. St. c. 117. The city is proceeding to use the proper funds whether the land is acquired by purchase or, as in this case, by condemnation.

Plaintiff relies on State ex rel. County of Ramsey v. Babcock, 186 Minn. 132, 242 N. W. 474, as authority for establishing impropriety on the part of the city in the acquisition of the necessary parcels for the bridge abutments. We fail to see where the Babcock case is applicable to the situation presented in this case. The Babcock action was brought by Ramsey County to compel the State of Minnesota to pay for acquisition of right-of-way in connection with the construction of Trunk Highways Nos. 62 and 63. This court defined "improving" for the purposes of interpreting Minn. Const. art. 16, § 1, which provided for the establishment of trunk highways, and art. 2, which provided for reimbursement to counties for money spent in permanently improving roads, concluding that the word "improving" as used therein did not contemplate the acquisition of right-of-way for trunk highways. The decision of this court was not unanimous in the Babcock case. In any event, Minn. Const. art. 16 was later substantially changed by amendment in 1956 and the language interpreted by the court in the Babcock case is no longer contained in art. 16.

Another contention advanced by plaintiff in support of his claim for injunctive relief is that the acts of defendants are a gross abuse of discretion and are arbitrary, capricious, invalid, and unreasonable.

To show the care and consideration given to the planned process of the twin-bridges project, defendants brought before the trial court the many plans that had been considered and later rejected. Although the issue arguably was waived in the course of the trial and needs no further consideration, after hearing all

the evidence presented by plaintiff and defendants, the trial court found:

"That there is no evidence of any fraud, gross abuse of discretion or bad faith on the part of the City of Minneapolis, the County of Hennepin, or the Housing and Redevelopment Authority in and for the City of Minneapolis."

Furthermore, the trial court concluded as a matter of law:

"That there is no irregularity in any of the proceedings taken by the defendant City of Minneapolis and the actions of the City of Minneapolis are not unreasonable, arbitrary, corrupt, capricious, or fraudulent."

The trial court reached a like conclusion with reference to defendant county. In its memorandum the court explained:

"Plaintiff's fourth contention is that the acts of the defendants were arbitrary, unreasonable, capricious and wasteful. Also, the plaintiff claims that the standards set in Borgelt v. City of Minneapolis (1965), 271 Minn. 249, 135 N. W. 2d 438, are pertinent and consequently the plaintiff presumably argues that there was fraud, gross abuse of discretion or bad faith on the part of the defendants. None of these contentions has been established by the evidence introduced by the plaintiff. Quite on the contrary, the evidence presented to the Court has shown that the appropriate officials have given careful consideration to many proposals for handling the traffic problems presented by the present bridge over the east channel of the Mississippi River and in the adjoining areas and has adopted a plan which is appropriate and justifiable to remedy these problems, to-wit: the twin bridge project and the related one-way streets and cloverleafs contemplated by the overall project."

Plaintiff attempted to meet the burden of showing that the actions of defendants were "arbitrary, unreasonable and wasteful" by the testimony of Mr. Tillitt, a registered structural engineer. Tillitt testified as to the cost of an alternative plan, saying that the twin-bridges project would cost somewhere be-

tween $880,000 and $1,028,000, while the plan proposed by Tillitt would cost between $741,000 and $864,000. These were merely his estimates. Defendants contend that on these figures it could be reasonably argued that the difference between the two plans would figure out to between 1 and 2 percent. This constituted plaintiff's testimony in his effort to show that defendants' actions were "wasteful."

Furthermore, Tillitt also admitted on cross-examination that he was not qualified to discuss the traffic aspects of his plan. He testified also that he had inspected the existing facility and had concluded that it could not be economically repaired and should be replaced. There was thus little, if anything, in the testimony advanced by plaintiff in this case to support his contentions.

As contended by defendants, the question whether public interests require or will justify a particular improvement is legislative or administrative in nature. Thus, this court must of necessity be limited to inquiring whether the local board or body acted arbitrarily and in disregard of the best interests of the public or upon an erroneous theory of law, and whether the evidence is practically conclusive against the order appealed from. Brazil v. County of Sibley, 139 Minn. 458, 461, 166 N. W. 1077, 1078; Linster v. Luecke, 186 Minn. 386, 243 N. W. 395.

It is not necessary on review for this court to discuss the evidence as a whole to resolve the conflicts therein or to demonstrate the correctness of a decision or a verdict. It is well established that a disputed fact question must be considered in the light most favorable to the verdict where an appeal involves the sufficiency of the evidence. To justify the outcome, this court will take the view of the evidence most favorable to the party in whose favor the determination is rendered.

The evidence produced on the part of defendants indicates a meticulous and deliberate planning process in approaching the solution of the problems created by the deterioration of the East Hennepin bridge. A careful analysis of the evidence indicates a well-thought-out plan on the part of the Hennepin County

engineers and no evidence showing fraud or abuse of discretion on the part of the Minneapolis City Council.

In the absence of bad faith, a taxpayer may not challenge the discretion of the city council as to the cost of a municipal improvement by injunction in a taxpayers' suit. In Borgelt v. City of Minneapolis, 271 Minn. 249, 260, 135 N. W. (2d) 438, 446, we said:

"* * * The general rule is stated in 18 McQuillin, Municipal Corporations (3 ed.) § 52.21, as follows:

" 'In the absence of fraud or of a gross abuse of discretion, a taxpayers' suit may not be used to control or interfere with the discretion of a municipal board or officer. Thus, such a suit ordinarily does not lie to control official discretion with respect to the expenditure of public funds, the leasing of municipal property, the demolishing of public buildings, the settlement of claims, the interposing of defenses to actions against the city, and the changing of the name of a town. Likewise, in the absence of bad faith the cost of a municipal improvement is in the discretion of the common council and cannot be interfered with by injunction in a taxpayers' suit.' "

Plaintiff relies on Faden v. Philadelphia Housing Authority, 424 Pa. 273, 227 A. (2d) 619. An examination of that case makes it clear that it is not applicable to the fact situation here. The principal issue in the Faden case was whether a taxpayer had standing to bring suit in equity against the Philadelphia Housing Authority, and the court held that the taxpayer did have such standing. There is no dispute in this case as to whether a taxpayer, such as plaintiff herein, has the right to challenge the propriety of defendants' actions. Plaintiff also relies on another Pennsylvania case, Price v. Philadelphia Parking Authority, 422 Pa. 317, 221 A. (2d) 138. This case is likewise not applicable, the facts therein being clearly distinguishable from those in the case before us.

Plaintiff further contends that defendant city did not comply with Minn. St. 462.356, subd. 2, which in part reads as follows:

"After a comprehensive municipal plan or section thereof has been recommended by the planning agency and a copy filed with the governing body, no publicly owned interest in real property within the municipality shall be acquired or disposed of, nor shall any capital improvement be authorized by the municipality or special district or agency thereof or any other political subdivision having jurisdiction within the municipality until after the planning agency has reviewed the proposed acquisition, disposal, or capital improvement and reported in writing to the governing body or other special district or agency or political subdivision concerned, its findings as to compliance of the proposed acquisition, disposal or improvement with the comprehensive municipal plan."

It appears that, during the period of time that the city and the county were contemplating a means for replacing the bridge over the east channel of the Mississippi River, the Minneapolis Planning Commission recommended to the city engineer and the city council the plan of constructing two bridges over the channel. That recommendation was referred by the city council to the Hennepin County engineers. The evidence submitted on behalf of defendants shows that the Minneapolis Planning Commission by its official action changed the land-use plan of the city in regard to Nicollet Island and the east bank of the Mississippi River to show the construction and provision for two bridges over the east channel of the river. The evidence clearly indicates that the planning commission was aware of the proposed location and recommended and approved the construction of the bridges at the site where they actually are to be constructed. It also shows that for the purpose of complying with the technical objection of plaintiff the city council did refer the matter of acquisition of the land required for the roadway connecting the bridges to the planning commission, and that the planning commission did

approve such acquisition during the time the trial court was hearing the facts in this case. The trial court subsequently permitted the case to be reopened and the official actions and recommendations of the planning commission approving the overall bridge plan and the acquisition of land to be offered in evidence.

In determining whether or not the procedure followed by the city adequately complied with Minn. St. 462.356, it is essential to consider the reasons for the language contained in subd. 2 of that section. Upon a reading thereof, it is clear that the reason the legislature required a referral of land acquisitions or disposals to the planning commission was to provide a review of the overall municipal development by the planning commission— the authority charged with the responsibility of recommending a comprehensive land-use plan for the municipality. In this case, those requirements had all been met as a practical matter in that the planning commission had recommended the construction of the bridges and had already instituted action on its own initiative to amend the city's land-use plan to provide for them.

Defendants suggest, and we think correctly so, that § 462.356 must be considered in conjunction with § 462.354, subd. 1, which provides in part:

"A municipality may by charter or ordinance create a planning agency. A planning agency created by ordinance may be abolished by two-thirds vote of all the members of the governing body. The planning agency shall be advisory, except as other powers and duties are imposed on it by sections 462.351 to 462.364, by statute, by charter, or by ordinance consistent with the municipal charter."

It is obvious from a reading of this statute that the consideration of the planning commission in any instance would be purely advisory to the city council. In this case the planning commission had given its advice to the city council prior to the time the city had taken action to acquire the parcels in controversy, thereby indicating that the two-bridge project was the preferable

plan. As a result, the planning commission then modified the land-use plan to make that plan comply with the recommendations. It seems clear, therefore, under these circumstances that to require another referral of the acquisition of the parcels of property for access to the north bridge would be unnecessary.

We agree with the trial court's analysis of this issue, as stated in its memorandum:

"The third objection is that there has not been compliance with the requirements of M. S. A. Section 462.356, Subdivision 2, as to planning commission approval. Before trial was commenced the planning commission had already adopted general land use plans for Nicollet Island and the mainland easterly of Nicollet Island which contemplated twin bridges over the east channel of the Mississippi River. The adoption of these general plans alone should constitute specific enough approval of the acquisition of the necessary land for roadways and bridges to satisfy the requirements of Section 462.356. Clearly, the action of the planning commission taken subsequent to the termination of the initial trial and introduced in evidence upon the reopening granted at the request of the City removes any possible doubt as to the compliance with that section. Because of the general action taken by the planning commission antecedent to the issuance of the restraining order, the restraining order was not justified."

Plaintiff failed to claim in the present appeal any error in the trial court's findings with respect to defendant Housing and Redevelopment Authority. It must therefore be concluded that plaintiff has implicitly conceded the propriety of the trial court's order that judgment be entered for the Authority. As we see it, the record discloses no action of any significance taken by the Authority with respect to the twin-bridges project. The trial court in its memorandum pointed out that Beatty v. Winona Housing and Redevelopment Authority, 277 Minn. 76, 151 N. W. (2d) 590, is dispositive of the injunction issue as against

the Authority, such relief being clearly premature as far as the Authority is concerned.

The evidence produced at the trial amply supports the findings of fact and conclusions of law made by the trial court. Plaintiff has failed to produce any evidence that the actions of defendants were in any manner illegal, improper, arbitrary, or capricious. Under the circumstances, the trial court properly and justifiably found that the city of Minneapolis is proceeding properly to acquire the parcels of land for right-of-way abutments for the two bridges to be constructed by the County of Hennepin; that the city of Minneapolis is authorized by the Minnesota statutes and by its city charter to pay for the acquisition of real estate for public purposes from its permanent improvement fund; that the action taken by the city and by the county in preparing plans for the needed bridges is proper; that there is no evidence of arbitrary, unreasonable, or wasteful actions on the part of defendants; and that, based on the facts in this case, there was adequate compliance with Minn. St. 462.356, subd. 2.

Plaintiff argues that it was error for the trial court to reopen the case and allow defendant city to introduce additional evidence, citing State, by Lord, v. Casey, 263 Minn. 47, 115 N. W. (2d) 749; 19 Dunnell, Dig. (3 ed.) § 9716. This court in the Casey case held (263 Minn. 55, 115 N. W. [2d] 755):

"Whether a party should be allowed to reopen his case after resting is a matter within the discretion of the trial court. 19 Dunnell, Dig. (3 ed.) § 9716. The trial court here stated that 'this is an extremely important case to both of the parties,' and on that basis decided that Mapco should be allowed to introduce further evidence as to its damages."

The principle established in Casey was that the matter of reopening a case is left to the discretion of the trial court. We see no error on the part of the trial court in the exercise of its discretion in the instant case in granting the motion to reopen. The trial court in granting the motion said:

"* * * It was at the urging of the Court that the parties all finally agreed that this should be a full trial on the merits. Normally, of course, there would not have been a trial on the merits until some date probably subsequent to right now, and in view of that fact, the Court feels that any action taken subsequently should be considered in the Court's final determination of the action. Furthermore, if the Court were in this case to grant a permanent injunction on the basis of the failure of the City Council and the Planning Commission to take the actions which it is claimed have been taken and there were an application to reopen the matter at that time to show this subsequent action, certainly the Court would have to grant that relief because it would be absurd that the City Council should be forever enjoined from proceeding in this matter if the City did subsequently take the steps deemed by the Court necessary to approve the action of the City authorities. A further consideration is that I have spent some time on this case last week and, frankly, I didn't think there was any merit in the plaintiff's position with respect to this particular statute because there had been an over-all approval of this plan and it seemed to me that it probably was not necessary under that statute that there be approval of the acquisition of specific pieces of property, but instead it was the over-all planning that the Planning Commission was to approve and there had been that type of approval, though there was absolutely approval of the taking of the specific land here involved, so all of those are reasons why the Court feels that it would be an abuse of discretion to deny the present application and further feels that if it is a discretionary matter, discretion should be exercised in favor of the reopening. The reopening is granted."

In view of this statement of the trial court, we conclude that its discretion was properly exercised in reopening the case.

Since the findings of fact and conclusions of law have ample

support in the evidence, upon the record herein the order appealed from must be affirmed.

Affirmed.