Helen Harris **WILLCOCKSON** et vir.,
Appellants,

v.

**COLORADO RIVER MUNICIPAL WATER
DISTRICT, Appellee.**

No. 11633.

Court of Civil Appeals of Texas.

Austin.

Dec. 11, 1968.

Rehearing Denied Jan. 15, 1969.

Runge, Marschall, Hall & McLaughlin, William I. Marschall, Jr., San Angelo, for appellants.

Rosser & Carroll, Snyder, McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, George D. Byfield, James W. Wilson, Austin, for appellee.

HUGHES, Justice.

This is a condemnation proceeding brought by Colorado River Municipal Water District against Mrs. Helen Harris Willcockson and her husband, J. R. Willcockson, Sadie Gwin Blackburn and husband, E. A. Blackburn, Jr.[1] to condemn certain real property in Coke County for the purpose of acquiring it for a municipal water supply dam and reservoir to serve cities and towns in the area and for incidental and connected purposes.

The special commissioners appointed by the County Judge of Coke County to assess the damages made an award to Mrs. Helen Harris Willcockson in the sum of $764,515.90 for the "value of surface estate of land taken, damages, if any, to remainder of land, including ¼ interest in minerals and value of ½ interest in water rights" owned by her.

The District filed objections to and appealed from this award to the County Court. There the trial was to a jury which found the damages to be $218,935.41 less than the award of the Commissioners and judgment in this amount was rendered for the District against Mrs. Willcockson, she having withdrawn the amount of damages awarded by the Commissioners and deposited by the District.

Appellants have four points. We have concluded that the fourth point must be partially sustained and that the error reflected requires that this cause be reversed and remanded. We will discuss this point first. Point four reads:

"The County Court erred in overruling the Landowners' objections to the instruction in connection with Special Issue No. 8 because

(1) The instruction allows the Condemnor to minimize damages to the oil, gas and other minerals by representations as to its future conduct;

(2) The instruction incorrectly states even the representations made by the Condemnor in its Statement for Condemnation; and

(3) The instruction is a comment upon the weight of the evidence as it particularizes and emphasizes only a part of the elements affecting the valuation of the minerals, assumes facts not in evi-

---

1. Mr. and Mrs. Blackburn did not appeal from the judgment below and their interests will not be noticed.

dence and implies matters contrary to the evidence."

We also copy Special Issue No. 8 and its accompanying instruction:

### "SPECIAL ISSUE NO. 8

What do you find from a preponderance of the evidence to have been the market value of the undivided one-half interest in the oil, gas and other minerals in and under the land to be covered by and taken for the lake and flowage easement purposes subject to the existing oil and gas lease immediately after such taking on September 29, 1967?

Answer in dollars and cents.

Answer $ 353,508.75

In connection with the foregoing Special Issue you are instructed that the Plaintiff[2] is obligated to provide earthen mounds around all oil and/or gas wells and water injection wells presently used by the Defendants or their mineral lessees within the boundaries of the lands taken for lake purposes and is further obligated to connect such mounds with the shore of the reservoir to be constructed by roadbearing dikes to be located and maintained by the District where, and in its opinion, such dikes are feasible, and the District will be obligated to provide a barge and operator, upon 48 hours notice, sufficient to float and transport a loan not to exceed 100,000 pounds, for use of the oil, gas and mineral owners or their lessees as necessary to the development and production of minerals; and that the District will be obligated to, as and when the need arises, grant to the owners or their mineral lessees such rights, permits, easements and use of the surface on, over, across and through lands owned or controlled by the District surrounding the proposed reservoir and above the elevation of 1898 feet above mean sea level necessary for the Defendants, or their mineral lessees, to conduct operations in exploring for, producing, treating and marketing oil, gas and other minerals in the lands. The owners and their lessees shall further retain the right to complete any well drilled for purposes of producing oil and/or gas or the injection of water for the water flood of any oil and/or gas producing strata under said lands drilled directionally from a shore location or from any mound which the District may construct upon the lands to accommodate existing producing wells or water injection wells."

The jury had found in answer to Special Issue No. 7 that the market value of the same interests described in Special Issue No. 8 before the taking was $400,000.00.

The Willcockson Ranch consisted of 7,493.51 acres straddling the Colorado River. The District condemned the surface of 4,014.43 of this ranch, 3,883.12 acres of which is below the 1900' elevation contour and would be covered by waters of the lake to be formed. The remaining 176.31 acres of these 4,014.43 acres were to be fenced by the District and used for a pump and supply site and for recreational purposes. In addition, the District condemned 442.12 acres for a flowage easement between the 1900' elevation contour and the 1912' elevation contour. Eighteen different surveys were affected by this flowage easement.

It was stipulated that, "Helen Harris Willcockson [owns] an undivided one-half interest in all underground water and underground water rights; an undivided one-half interest in the executive right to execute oil, gas and mineral leases; an undivided one-fourth interest in the oil, gas and other minerals; and all of the surface estate" in the property being condemned.

We quote from the District's Amended Statement for Condemnation:

"Petitioner excepts from this Statement for Condemnation and excludes

2. "Plaintiff" refers to the District.

from this taking all oil, gas and other minerals in and under the lands above described. Petitioner would further show that Lessees of the Defendants are presently engaged in the production of oil and gas from said lands by both primary and secondary means of recovery. Petitioner will provide and is in the process of providing earthen mounds around all oil and/or gas wells and water injection wells within the lands above described presently utilized by Defendants or their mineral Lessees and will connect such mounds with the shore of the reservoir to be constructed by dykes upon which roads will be located and maintained by District where, in its opinion, such procedures are feasible, and will provide a barge and operator, upon 48 hours notice to petitioner, sufficient to float and transport a load not to exceed 100,000 pounds, for use of the oil, gas and mineral owners or their Lessees as necessary to the development and production of minerals. Petitioner will, if, as and when the need arises, grant to Defendants or their mineral Lessees such rights, permits, easements and use of the surface on, over, across and through lands owned or controlled by petitioner surrounding the proposed reservoir and above the elevation of 1898 feet above mean sea level, as are necessary for Defendants, or mineral Lessees of Defendants, to conduct operations in exploring for, producing, treating and marketing oil, gas and minerals from said above described lands. Defendants shall further retain for themselves and their mineral Lessees the right to complete any well drilled for the purpose of producing oil and/or gas or the injection of water for waterflood of any oil and/or gas producing strata under said lands above described drilled directionally from either a shore location or from any mound which petitioner will construct upon said lands to accommodate existing producing wells or water injection wells."

Insofar as the Statement for Condemnation and the charge of the Court authorized the jury to consider promises of the District as to its future conduct in assessing the damages to the mineral interests of Mrs. Willcockson the proceedings were contrary to the well established law upon this question. We quote from an annotation in 7 A.L.R.2d, p. 364 wherein this subject is discussed at great length:

"This annotation deals generally with the effect to be given, in eminent domain proceedings, to promises, promissory statements or stipulations, or declarations of future intentions either as to use or as to undertakings to be performed in the future on the part of the condemner. Such promises, declarations, or statements are obviously made or proffered with a view to reduction or mitigation of the landowner's damages, and usually involve either efforts to reduce damages by statements or averments in pleadings, efforts on the part of the condemner to introduce evidence of its promises or future intentions as to use of the property, or efforts to secure instructions relating to the effect of such promises or future intentions.

When such statements as to the condemner's intended use of the property or as to undertakings to be performed in the future on its part are ascertained to be merely promissory, they are held ineffectual to affect the landowner's damages, and inoperative to reduce or mitigate the compensation, whether the question arises out of the pleadings, evidence, instructions, or otherwise. * * *

Once it is ascertained in a particular situation that what is really involved is merely promissory, the courts are well agreed that an unaccepted promise, promissory statement or stipulation, or declaration of future intentions by a condemner as to what will be done or not done with respect to the property condemned, to that left untaken and to the rights of the landowner in relation there-

to, cannot affect either the character or extent of the condemner's rights acquired or the amount of the damages it must pay as just compensation. A condemner cannot avail of what may aptly be termed a 'conditional' condemnation, but must take whatever rights are sought to be appropriated absolutely, paying in full therefor, regardless of future intentions; the rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation."

Authorities from several states are cited in support of the text. In a later annotation (Vol. 1 Later Case Service A.L.R.2d p. 677) the cases of City of Houston v. Charpiot, 292 S.W.2d 677, Tex.Civ.App. (Galveston, 1956) writ ref. n. r. e. and Wair v. State, 349 S.W.2d 637, Tex.Civ. App. (Texarkana, 1961) writ ref. n. r. e. 163 Tex. 69, 351 S.W.2d 878, are cited in support of the text.

Charpiot holds that while our constitution (Art. 1 Sec. 17) requires money compensation to be paid the owner in condemnation proceedings a definition of "market value" in the charge which would permit the jury to ascertain market value on the basis of a partial credit transaction rather than on the basis of an all cash sale was not error. The reasoning of the authorities relied upon by the Court was that such a sale would be the equivalent of cash and hence constitutionally permissible.

We are unable to perceive the applicability of the decision in Wair on this question.

Appellee seems to rely upon the fact that its promises were made in the statement for condemnation rather than merely from a witness. We quote from its brief:

"Appellants base their point on the grounds that the Court's instruction was improper 'because it allowed the Colorado River Municipal Water District to minimize the damages caused to the oil, gas and other minerals in and under said land by evidentiary representations.' It must be noted from the outset that this characterization is completely incorrect. The instruction was not based upon evidentiary representations but upon conditions in the Statement in Condemnation which expressly reserved these benefits to the mineral owners. In their statement under this point appellants ignore the fact that the instruction by the Court complained about was taken directly from the Statement in Condemnation as filed by the District. In other words, at the same time, and by the same instrument, that the District effected a severance of the surface and mineral estates it stipulated the conditions which would effectively preserve appellants' mineral interest. * * *

When the District excluded the oil, gas and other minerals from its taking, it severed the mineral estate from the surface estate, and under well-established principles of oil and gas law the automatic effect of such severance was to leave the District's surface estate burdened by the mineral owners' necessary rights of ingress and egress to develop, produce, store, etc., the oil, gas and other minerals underlying the land. In other words, the appellants, as mineral owners, retained a mineral easement. 42 Tex. Jur.2d, Oil and Gas, § 84. The conditions set forth in the Statement in Condemnation and carried forward into the Court's instructions define the extent to which the mineral easement of landowners will be given effect by the District. Viewed in another light, equally proper, these conditions define the extent to which the landowners' mineral easement is subjected to use or damaged by the District.

Throughout these conditions, the District provides what it 'will' do to preserve unto landowners their reserved mineral easement and it must be recognized that the verb 'will' as used throughout is mandatory, meaning the same as 'shall' or 'must.' McElroy v. Luster, [Tex. Civ.App.] 254 S.W.2d 893, 896 (Ft.

Worth 1953, writ ref.); and Airline Motor Coaches v. Guidry, 241 S.W.2d 203, 209 (Tex.Civ.App.1951, ref. n. r. e.). Thus, the District binds itself in a manner enforceable by the courts to provide ingress and egress through lands surrounding the lake and to drill and complete wells directionally from the District offshore or from mounds."

Appellee cites such authorities as Texas Power and Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958) to sustain its position. In that case the condemner limited the extent of the easement sought to permit the landowner the right of ingress and egress to mine gravel. The Court held that an instruction to the jury defining the easement sought and its limitation was not a comment on the weight of the evidence. In the course of its opinion the Court said, "This is not a case in which a mere oral unilateral representation as to future use by the condemning authority is involved * * *"

While the promise of the District here is in writing it is unilateral and of a promissory nature. We are not aware of any authority or any reason which supports the validity of a written unilateral promise by the condemner when the oral unilateral promise of the condemner would be invalid.

■ A condemnee must recover all of his damages upon trial of the condemnation suit. City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943). The damages, if any, to the mineral estate of Mrs. Willcockson must be recovered now. Their ascertainment may be difficult, but this is no excuse to prevent their adjudication. City of LaGrange v. Pieratt, supra.

■ We hold that the so-called obligations of the District to provide earthen drilling mounds and to connect such mounds by dikes with the shore and to provide and operate a barge are not mere limitations or restrictions on the property being condemned but that they are unilateral promises as to the future conduct of the District and that they should not have been submitted to the jury in the charge of the Court as obligations of the District to Mrs. Willcockson to be used by the jury as affecting the value of the mineral interest owned by her after the taking. In short, we hold that these promises are not money nor the equivalent of money which Mrs. Willcockson can be forced to take in lieu of money.

■ Appellee has filed a post-submission brief in which it contends that the error, if any, in the instructions given in connection with Special Issue No. 8 was harmless error. The District directs attention to these facts: All of the lands which will be covered by the waters of the lake are subject to an oil and gas lease in favor of Humble Oil and Refining Company which lease covers most of the Willcockson Ranch. A portion of the land under the lake is presently producing oil and gas. This production keeps in force the non-producing portion of the leased lands. The District and Humble negotiated a settlement of their problems and it was from this negotiated settlement that the rights and limitations set forth in the Statement for Condemnation came. From these facts, the District concludes, "Therefore, appellants' statements that these are mere unaccepted promissory statements are inaccurate. The obligations of the District arise from the contract between the District and Humble.[3] In making these arrangements Humble represented appellants' interests as well as its own interest under its lease."

The District also calls attention to the testimony of Humble's engineering division manager having responsibility for the Willcockson ranch area, "that the prospects for additional development are not profitable commensurate with the risk involved."

---

3. This contract is not in evidence. Mrs. Willcockson was not a party to it.

There is no evidence that Humble was the agent of Mrs. Willcockson in contracting with the District except that Humble was lessee in an oil and gas lease [4] executed by her to Humble. The District says this relationship made Humble the agent of Mrs. Willcockson in this matter, citing Shell Petroleum Corp. v. Railroad Commission, 137 S.W.2d 797, Tex.Civ.App., Austin (1940) n. w. h. In this case the Court held that royalty holders under an oil and gas lease were not necessary parties to an appeal by their lessee from an order of the Commission denying a permit to drill, the Court saying: "In the drilling and spacing of wells the lessee represents the royalty owners * * *."

■ With neither the Humble lease nor the Humble-District Contract before us, we are in no position to appraise their contents. We do know that, ordinarily, the relationship between a lessor and lessee in an oil and gas lease is not that of principal and agent although this relationship may exist as to some matters, i. e., sale by the lessee of the oil and gas produced and the duty of the lessee to account to the lessor, or as shown in Shell v. Commission, supra, in similar matters.

There is no need for us here to discuss the rights conferred by an ordinary oil and gas lease. They are fully treated in Oil and Gas, Vols. 42 and 43, Tex.Jur.2d.

We do hold, under the record before us, that it is not shown that in executing the District-Humble Contract that Humble acted as agent for Mrs. Willcockson or that she is bound by its terms.

The testimony of Humble's engineer regarding future development of the Willcockson Ranch considering the "risk" involved points up the crucial issue in this case. Mrs. Willcockson contends that with a municipal water reservoir covering these lands that the risk of producing from those lands covered by water and of their further development by wells drilled from mounds or directionally drilled from shore would be so great as to deter Humble and herself, if the lease expired, from properly producing and developing the minerals thereunder, and that such deterrent has greatly reduced the value of her interest in the minerals.

■ We have no doubt that it is proper for the District to answer or discount this contention by permitting it to show that it has made arrangements with Mrs. Willcockson's lessee that the financial deterrent of operating or developing an oil field under water has been diminished or removed so that such operations will not suffer interference, and that the value of Mrs. Willcockson's minerals will not be depreciated by the lake. This, however, is but one piece of evidence which the jury hearing this case should consider along with all the other evidence, of which there is a great deal, relevant to the damages which these minerals may or may not sustain.

Considered as evidence, and evidence only, the content [5] (as we know it) of the Humble-District Contract should not have been and should not be singled out from all the other evidence on the issue of damage to the mineral estate and such instructions given concerning it as was done in this case. To do so is to improperly comment upon the weight of it as evidence prohibited by Rule 272, Texas Rules of Civil Procedure. See Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943), Hooper v. Courtney, 256 S.W.2d 462, Tex. Civ.App., Amarillo, n. w. h. (1952).

Under the evidence the damage to the mineral estate in suit ranges from zero to $375,000.00. The jury found the damages to be about $45,000.00. Appellee has no counterpoint to the effect that this finding is without support in the evidence. In fact, its Third Counterpoint recites, in regard to the damages to the mineral estate,

---

4. This lease is not in evidence.

5. The Contract itself is the best evidence of its contents.

that "the damages awarded were clearly supported by the evidence."

In view of another trial, we call attention to the admonition of Justice Steakley in DuPuy v. City of Waco, 396 S.W.2d 103, Tex.Sup. (1965) as follows:

"This Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (1936), recognized that the rule applicable to the determination of damages when there has been a permanent injury to land by reason of the construction of a public improvement requires an ascertainment of the difference between the market value of the land immediately before and immediately after the construction. The reasoning of the Court in resolving the question there presented is equally applicable to the problem here presented, i. e., it is not proper to instruct the jury as to certain items or elements of damages which may or may not be taken into consideration in ascertaining depreciation in market value; the Court there said: 'It appears to us that in most if not in all cases the whole matter of what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instructions to the jury.' "

Also, in view of another trial, we are required to pass upon appellants' first point which is that the trial court erred in permitting the District to plead in the County Court on appeal special benefits to the land not taken as an offset to damages it may have sustained by the taking when such benefits were not mentioned in its original Statement for Condemnation filed with the County Judge and were not mentioned or pleaded until the proceeding reached the County Court.

We overrule this point upon the authority of Tarrant County Water Control and Improvement Dist. No. I v. Hubbard, Tex. Sup. (11–6–68), 433 S.W.2d 681.

Appellants' remaining Points, 2 and 3, are that findings of the jury as to the "before" value of the remaining 3,479.08 acres (Sp. Issue No. 5) and the "before" value of the undivided one half mineral interest under the lands, the surface of which was taken, and those covered by the flowage easement (Sp. Issue No. 7) were not supported by any evidence of probative value or were contrary to the great weight and preponderance of the evidence.

We do not pass upon these Points for the reason that neither the evidence nor the jury findings will likely be the same upon a new trial.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.