353 So.2d 1211 (1977)
George H. HODGES, Jr., et al., Petitioners,
v.
JACKSONVILLE TRANSPORTATION AUTHORITY, Respondent.
No. HH-465.
District Court of Appeal of Florida, First District.
December 23, 1977.
*1212 Hall & Booth, Tallahassee, C. Ray Greene of Greene & Greene, Jacksonville, for petitioners.
William Lee Allen, Jacksonville, for respondent.
BOYER, Acting Chief Judge.
Petitioners, who are land owners in Duval County, Florida, here seek review by petition for certiorari, of a contested Order of Taking entered in an eminent domain proceeding commenced by the Jacksonville Transportation Authority.
Petitioners, in 1970, together with other property owners, conveyed by quit-claim deed in favor of respondent (JTA) certain property within the boundaries of the Consolidated City of Jacksonville as right-of-way for the construction of a controlled access highway, known as J. Turner Butler Boulevard. The quit-claim deeds contained a provision that if the JTA decided to construct a limited access highway it would provide paved service roads along each side with access on alternate sides at intervals of one-half mile. The westerly 5.7 miles of the proposed 13 mile highway were constructed as a controlled access highway. JTA then determined to construct the balance as a limited access highway. The alignment of the proposed highway was changed to a route curved northerly of the donated property except for a small portion near the point at which the proposed highway would cross the Intra-Coastal Waterway.
Exercising its power of eminent domain, JTA filed its complaint for condemnation in June of 1977 seeking to thereby obtain right-of-way along the new proposed alignment. At a hearing on the Order of Taking which was held on October 19, 1977 the *1213 property owners resisted the entry of an Order of Taking on the ground, inter alia, that there had been no compliance with F.S. 338.01, which statute requires municipal consent to certain limited access highway construction. A final hearing was held on October 25-26 at the conclusion of which the Order of Taking here sought to be reviewed was entered. We are here only concerned with Parcels 50 and 50X.
Petitioners seek to overturn the Order of Taking on the grounds that: municipal consent had not been obtained as required by F.S. 338.01; the resolution authorizing condemnation was invalid as to Parcels 50 and 50X because JTA already owned substantially all of the property needed for right-of-way purposes along the original alignment; the appraisal submitted for severance damages as to Parcel 50 was invalid since it was based upon the assumption of access to the balance of the parent tract when in fact no evidence of such access was admitted into evidence and the Declaration of Taking was invalid because it was only signed by an Assistant General Counsel of the City of Jacksonville.
We first address petitioners' contention that respondent has failed to comply with F.S. 388.01(1) in that no consent to the construction of a limited access highway on the subject property has been obtained from the City of Jacksonville, an incorporated municipality within which such property is admittedly located. We agree. The statute is clear and no good reason has been shown for noncompliance. Indeed, it is questionable whether noncompliance may be excused. Respondents successfully urged before the trial court that other instruments executed by the City of Jacksonville containing reference to the construction of the proposed highway on the subject property sufficiently evinces municipal consent and therefore constitutes compliance with the statute. Our examination of those documents reveals that they do not meet the test. The record reveals, however, that at the instance of respondent a resolution has been introduced in the City Council of the municipality which, if adopted, will comply with the statute. We do not hold that the proceeding must be dismissed for failure to obtain timely consent but only that it must be abated until that event has occurred.
Petitioners also urge that the Declaration of Taking filed pursuant to the provisions of Chapter 74, Florida Statutes, is ineffective because it was not signed by the chairman nor any member of the JTA but was signed only by that body's attorney, an assistant to the General Counsel of the City of Jacksonville. We hold contra. Our examination of the record reveals a certified copy, signed by JTA's chairman and secretary and bearing its seal, of a resolution entitled "A Resolution Declaring the Public Necessity for Acquiring Fee Simple Title Through Condemnation by Right of Eminent Domain of Certain Lands for the Easterly Extension of J. Turner Butler Boulevard as a Limited Access Facility, Directing the Office of General Counsel of the City of Jacksonville to Institute Appropriate Condemnation Proceedings." The resolution concluded with the following words: "The Office of General Counsel of the City of Jacksonville is directed to institute appropriate legal proceedings to acquire by condemnation the fee simple title to the land described in Section 2 in accordance with this resolution." Petitioners contend that such resolution is insufficient to authorize the General Counsel or his assistant to sign the Declaration of Taking pursuant to Chapter 74, Florida Statutes, which, unlike proceedings pursuant to Chapter 73, Florida Statutes, permits the condemning authority to acquire title prior to trial by depositing the sum determined in the Order of Taking. It is the position of petitioners that such an undertaking is of such grave consequences as to require a specific resolution to proceed pursuant to Chapter 74 or to require the signing of the Declaration of Taking by the chairman or his designee of the condemning authority. We are not unmindful of petitioners' argument that once the Declaration of Taking has been validly filed and the deposit made in accordance with the order, the condemning authority is bound to pay *1214 the price ultimately fixed even if such payment should bankrupt the condemning authority. It is not the prerogative of this court to question the wisdom of the actions of a governmental entity. In any event, since the institution of this proceeding in this court the condemning authority is on ample notice of the consequences of its actions. If it desires to rescind or amend its resolution it may yet do so.
At the hearing on the Order of Taking petitioners' attorney objected to, and sought to have stricken, the appraisal as to Parcel 50, claiming it to be invalid because it assumed access to that parcel and none in fact existed. The appraiser testified that his appraisal as to damages sustained by the property owners was based upon the assumption that an access road was provided to the remainder of said parcel. Our examination of the record reveals no evidence of the existence of any such access nor is there evidence of any enforceable agreement that such access will be furnished. An engineer testifying at the instance of respondent stated that such access would be furnished but there is no evidence that he had authority to bind the condemning authority, nor do the plans and specifications in evidence or in the pleadings reveal such access. In the absence of proof of access the appraisal admittedly based upon the assumption of its existence was invalid and should not have been admitted.
As above stated, in the year 1970, in anticipation of construction of the subject highway, JTA obtained gratuitously from petitioners a quit-claim deed to a parcel of property over which it was then anticipated that the highway would be constructed. That quit-claim deed contained inter alia the following recitations:
"In the event Grantee fails to commence construction of a road on the land described above, and in good faith pursue that construction to completion, within thirty (30) years after the date hereof, then the land shall revert to Grantor in fee, and thereafter Grantee shall have no further right, title or interest therein. "Grantee shall have the right to construct a limited access highway on the land described herein, but in that event Grantee shall construct and pave a service road on both sides of the limited access highway, either on the land conveyed herein, or if it is insufficient, along additional abutting land, if it is made available to Grantee at no cost to it. In such case, Grantee shall bear the entire cost of constructing and paving the service road. The Grantee shall provide access to the limited access highway at intervals not to exceed one-half mile apart on each side of the highway. If the highway is not designated as a limited access highway, the abutting property owners will have full access to the highway for the development of abutting property."
The property now sought to be condemned by respondent lies northerly of the property described in the quit-claim deed. Petitioners contend that respondent is acting in bad faith in changing the alignment of the proposed highway and that the true reason for the change of the alignment is so that JTA may avoid compliance with the above quoted conditions or provisions of the quit-claim deed. JTA, in its brief and oral argument, urges that the reason for the change of alignment was to meet environmental standards but admits that although its counsel has advised that it should reconvey the property described in the quit-claim deed, it has failed so to do. We are loathe to hold that, as a matter of law, proceedings to acquire a right-of-way by the power of eminent domain while already owning a substantial portion of the necessary right-of-way via another alignment is necessarily indicative of such bad faith as to vitiate the condemnation proceeding. However, proof of ownership by the condemning authority of an alternative route or a substantial portion thereof is material to the reasonable necessity required as a condition precedent to the taking. (See City of Jacksonville v. Griffin, 346 So.2d 988 (Fla. 1977).)
Our interest in the route or alignment is valid only insofar as it may affect the prerequisite of reasonable necessity for the *1215 taking. Whether the road should be straight and relatively shorter, as the evidence reveals to have been intended at the time of the procurement of the quit-claim deed from petitioners, or whether it should be longer and curved, may be of legitimate interest to the taxpayers who must pay for it but not to us. We are not unmindful of the adage that the engineer's transit has no conscience nor are we insensitive to environmental and ecological considerations. However, although the record before us reveals that the highway as originally proposed over petitioners' land was straight, while the presently proposed realignment is curved and longer, there is nothing in the record to reveal that the original straight alignment was strewn with sinkholes, gullys, swamps nor other natural barriers; nor does the record reflect that the original alignment, as distinguished from the one now proposed, will disturb a single eagle's nest, woodpecker's habitat nor otherwise adversely affect the balance of nature. Although respondent adduced a great deal of testimony relating to the environmental impact of a limited access highway as distinguished from a controlled access highway, a reading of the record reveals not one scintilla of evidence in support of the necessity for the realignment, viz.: The taking of the subject property. The engineer who conducted the environmental impact study testified that there were four alternative alignments and that an environmental agency suggested a fifth. However he did not testify as to the advantage or necessity of one over the other. It necessarily follows that respondent failed to carry its burden of demonstrating a reasonable necessity for the taking of the subject property. Being bound, as we are, by the record before us we do not, of course, speculate as to what facts the evidence may ultimately reflect. We do determine, however, that in view of the uncontradicted fact that respondent already owns a substantial portion of the right-of-way needed for the subject road, were it to be constructed along the original alignment, the reasonable necessity for the proposed taking which is the subject of this controversy has not as yet been shown. We do not rule that respondent cannot do so but only that it has not done so.
Certiorari is granted. The Order of Taking is quashed and this cause is remanded for further proceedings consistent herewith.
Petitioners have filed a timely motion seeking an award of attorney's fees incident to this proceeding, which is only a minor skirmish, hardly even a major battle, in the war of eminent domain. We therefore decline to award or fix attorney's fees at this time incident to this particular proceeding but direct instead that at such time as the trial court shall ultimately consider attorney's fees incident to the eminent domain proceeding it shall receive evidence incident to this proceeding as a facet of the entire award and include in that award appropriate compensation for the services rendered here.
IT IS SO ORDERED.
MILLS and MELVIN, JJ., concur.