**CITY OF ST. LOUIS PARK,
petitioner, Respondent,**

v.

**The ALMOR COMPANY, et
al., Appellants.**

No. 51793.

Supreme Court of Minnesota.

Dec. 17, 1981.

Rehearing Denied March 9, 1982.

Fredrikson, Byron, Colborn, Bisbee & Hansen, Terence M. Fruth and Thomas S. Fraser, Minneapolis, for appellants.

Popham, Haik, Schnobrich, Kaufman & Doty, Wayne G. Popham and Catherine A. Polasky, Minneapolis, for respondent.

YETKA, Justice.

This is an appeal from the judgment entered June 20, 1980, on a Hennepin County District Court jury's condemnation award. The former owner and the former lessee of the property taken, appellants here, initially appealed from the award given in an October 20, 1977 report of a district-court-appointed three-person condemnation commission. The jury verdict from the district court was returned March 27, 1980, and appellants' motion for a new trial was denied May 27, 1980. We reverse in part,

affirm in part, and remand for a new jury trial.

The issues on appeal are:

1. Whether the district court abused its discretion in receiving evidence of the possibility that in the future the condemnor City would provide alternative access to the otherwise landlocked property.

2. Whether condemnation damages are measured as of the time of the commission award or as of the time of appeal to the district court.

This condemnation action, initiated by the City of St. Louis Park (City) in September 1976, resulted from the City's plans to upgrade and widen "Louisiana Avenue." Louisiana Avenue runs north and south and lies to the west of property owned and occupied by the appellants. The City took a strip of land on the western border of the subject property by eminent domain, thus permanently removing all access to and from the property via Louisiana Avenue. This left appellants formally landlocked: the property to the south and north is owned by a private company and the property to the east, by the City.

Appellant, Cardinal Insulated Glass Company (Cardinal), has occupied the subject property as a leaseholder since 1962, there manufacturing "sealed insulated glass." The property is zoned for industrial use and is occupied by a factory building which contains offices and loading docks for use by "semi" trucks. Appellant, The Almor Company, owns the property in fee. The two companies requested below that their claims be treated as one award, and hereinafter are referred to in this opinion by the singular "Cardinal."

Cardinal first learned of the Louisiana Avenue project in the early 1970's and of the project's final design in 1975. Cardinal and City officials met numerous times throughout the mid-1970's to discuss possibilities for "alternative access" to the Cardinal facility. The parties to this appeal have variously characterized the efforts made by Cardinal and the City to reach an agreement on access. It is clear, however, that, prior to the time of the commission award, there was little possibility of securing access over the privately-held property to the south, mainly because of cost; that Cardinal and the City proceeded in their negotiations on the assumption that the City would ultimately provide access and would secure necessary railroad line easements over the pertinent City land; and that the access provided would be permanent access.

What makes this case unique is that, even as of the time of the later district court award, there was no formal agreement between the parties regarding access. Prior to the commission hearing and again prior to trial, the City passed City Council resolutions directing that free access be provided Cardinal. No agreement was reached, however, mainly because the railroad easement documents included a provision allowing the railroad to terminate any easement over its tracks upon 30 days' notice. This provision was not "dropped" until, at most, 3 days prior to trial.

■■■ Thus, at the time of the commission award, there was no agreement on access. On October 20, 1977, the commissioners awarded Cardinal $186,621.75 and added to this award "in kind" damages of access to be provided free by the City. The City had represented that such access would be made available. This award, challenged by appellants as improper because it included more than just money damages, was made moot by the *de novo* review later afforded in the district court. Minn.Stat. § 117.175, subd. 1 (1980). The date of the commission award remains crucial to this case, however, because it constitutes the date on which damages for the taking are assessed.

■■■ At trial in the district court, Cardinal argued for damages representing a total taking of access. Testimony evidence of the commission's findings was given by one of the commissioners. The appraiser for appellants testified that the subject property was worth $525,000 prior to the taking and $130,000 after the taking. At appellants' direction, this appraiser also tes-

tified that he arrived at the $130,000 figure by assessing, *inter alia*, the "cost-to-cure" factor that appellants argue should have been suppressed from the evidence at trial. This appraiser valued the "cost-to-cure" (the cost necessary to make the property as serviceable as it was prior to the taking— relocating machinery, parking, loading dock facilities, etc.) at $229,500. Cardinal asked for damages in excess of $400,000. From such an award, appellants expected to have to pay for their access from the City. The court denied appellants' motion that its appraiser be allowed to testify as to March 1, 1980 figures: *i.e.*, damages for total taking- $490,000; "cost-to-cure" given access- $331,000. This denial was consistent with the court's decision, reiterated throughout trial, that all damages would be assessed as of the date of the commission award (October 20, 1977).

At trial, the City argued that a reasonable buyer of appellants' property would take into account the lack of access, yet would also assess the *possibility* of obtaining access from the City. Testimony evidence was elicited demonstrating that a reasonable buyer would call City officials and the pertinent railroads in an effort to assess the possibility of later purchasing access. The buyer would note that it would not be in the City's or railroads' interests to keep Cardinal landlocked because the City would lose an industrial tax base and the railroads a potential customer. Respondent's real estate appraiser was read a hypothetical set of facts, which included a conveyance of access at fair market value (*i.e.*, the cost not affected due to the City being the only source), and testified that the damage to Cardinal would be $90,000.

The district court instructed the jury that its determination was "to be made in the light of all facts affecting value as shown by the evidence." After 3 hours of deliberation, the jury returned a verdict for appellants of $256,000.

1. With regard to the admission at trial of "access" evidence, respondent City argues on general principles that it is within the trial court's discretion to admit mitiga-

tion of damages evidence. *See, e.g., Metropolitan Sewer Board v. Moore*, 303 Minn. 110, 113, 226 N.W.2d 314, 315 (1975); *Pautz v. American Ins. Co.*, 268 Minn. 241, 248, 128 N.W.2d 731, 736 (1964); *State v. Casey*, 263 Minn. 47, 54–55, 115 N.W.2d 749, 755 (1962). Further, the City argues that such evidence is admissible if it "legitimately bears on the market value of the [taken] property," *State v. Gannons, Inc.*, 275 Minn. 14, 18, 145 N.W.2d 321, 326 (1966). Respondent argues that the reasonable potential buyer would assess *potential* access in arriving at a purchase offer, just as he or she would assess other valuation factors.

General principles more soundly support appellants' theory that "access" evidence should not have been admitted.

Whatever rights are sought to be appropriated in eminent domain must be taken absolutely and unconditionally. \*\*\* Thus, it is agreed that an unaccepted promise, promissory statement, or stipulation, or declaration of future intentions by a condemnor as to what will be done or not done with respect to the property condemned, or to that left untaken and to the landowner in relation thereto, cannot affect either the character or extent of the condemnor's rights acquired or the amount of damages it must pay as just compensation.

26 Am.Jur.2d *Eminent Domain* § 154 (1966). Beyond general principles, the parties cite and distinguish various cases bearing on the admission of evidence of potentially "speculative" cures. These cases were, for the most part, decided on the basis of the *certainty* of the cure *at the time of the taking*.

Supportive of admitting such evidence is *Duluth & Winnepeg R.R. v. West*, 51 Minn. 163, 53 N.W. 197 (1892), an old Minnesota condemnation case in which the jury was allowed to consider the condemnee's evidence of a future city annexation of the subject property. The evidence probably increased the value of the property in the jury's eyes. This court allowed admission of the evidence because of the certainty and imminency of the new annexation law. *Id.* at 166, 53 N.W. at 198. Also generally

supportive is *Big Pool Holstein Farms, Inc. v. State Roads Comm'n*, 245 Md. 108, 225 A.2d 283 (1967), in which the jury was allowed to consider the availability and cost of access in their determination of damages. Appellants are correct, however, in noting that in *Big Pool* the access availability was certain—the state read into the record a statement that it would "definitely" acquire and convey at little cost the access property to the owner. Also, the court allowed the admission of this access evidence despite its post-dating the taking, a result not possible under Minnesota's rule that damages are to be assessed as of the time of the commission hearing. Finally, a Wisconsin case, in dicta, supports the City's position that access information should be admitted because "a willing buyer" would seek such "in making a judgment as to value." *Bembinster v. State*, 57 Wis.2d 277, 282–83, 203 N.W.2d 897, 900 (1973) (jury allowed to assess "probability" that town would build road and thus provide access over condemnee's property remainder).

Supportive of not allowing access evidence is *State v. Casey*, 263 Minn. 47, 115 N.W.2d 749 (1962), a Minnesota case in which the state took property that housed a tunnel running between the condemnee's remaining non-adjacent tracts. The state was not allowed to introduce evidence that the condemnee might later mitigate damages by building a second tunnel primarily because such mitigation would be entirely contingent on the state's later allowing the tunnel under the taken land. *Id.* at 54–55, 115 N.W.2d at 775. Similar in theory are the foreign decisions of *Hodges v. Jacksonville Transp. Auth.*, 353 So.2d 1211, 1214 (Fla.Dist.Ct.App.1977) (appraiser's testimony stricken because based on assumption of access, such access not demonstrated by evidence nor "enforceable agreement") and *Wolfe v. State*, 22 N.Y.2d 292, 295–96, 292 N.Y.S.2d 635, 638–39, 239 N.E.2d 517, 519–20 (1968) (following taking, which left condemnee with right to build access bridge only with condemnor state's approval, state could not stipulate at trial that bridge would be allowed). Respondent City argues that the above cases are distinguishable on the basis that the City was always, prior to the commission hearing, willing to provide access and that such access would have been physically easy to provide. The thrust of the cases, however, is to focus on the *existence* of access.

Two Texas Court of Civil Appeals cases point up the fine distinctions on which a finding of "certain" access can be based. In *Willcockson v. Colorado River Munic. Water Dist.*, 436 S.W.2d 203 (Tex.Civ.App. 1968), the court disallowed from evidence as "merely promissory" certain statements that the condemnor Water District included in its initial and filed Statement of Condemnation. The district had formally promised that it would take such actions as would give the condemnees a "mineral easement" (allowing development of mineral rights) on the taken land. The court held that "these promises are not money nor the equivalent of money which [condemnee] can be forced to take in lieu of money." *Id.* at 208. Three years later, in *Missouri Pac. R.R. v. State*, 469 S.W.2d 817 (Tex.Civ.App. 1971), the court allowed a state condemnor's evidence that demonstrated that future access to a landlocked remainder would be available as soon as a new highway and adjoining access roads were built. The court distinguished *Willcockson* by noting that, in the case before it, the state had already acquired the necessary access property; that the access roads were pursuant to an admittedly "certain" government contract; and that the access-granting was an "integral [part] of the public facility for which the property was condemned." *Id.* at 820. Relating this to the case at hand, the factor of "certainty" of acquisition favors the City, it already owning the property available for access. The factors of certainty in the giving of access (the *Missouri Pacific* government contract) and of "integral-ness" of the easement, however, favor the appellants. For these reasons, we reverse the trial court as to the admissibility of the access evidence.

■ 2. The second issue warrants little discussion. The established rule in Minnesota, as in the majority of jurisdictions, 3

*Nichols' The Law of Eminent Domain* § 8.5[2] (J. Sackman rev. 3d ed. 1978), is that condemnation damages are assessed as of the date of the commission award. *Twin Cities Metro. Public Transit Area v. Twin City Lines, Inc.,* 301 Minn. 386, 398, 224 N.W.2d 121, 128 (1974); *State v. Pahl,* 257 Minn. 177, 182, 100 N.W.2d 724, 728 (1960); *Iowa Elec. Light & Power Co. v. City of Fairmont,* 243 Minn. 176, 183, 67 N.W.2d 41, 46 (1954). Appellants argue that this rule should not be followed in the present case for three reasons.

First, the commission award was never complied with. Respondent City points out, however, that, in fact, the City paid the 75% of the cash award required by the statutes pending appeal. *See* Minn.Stat. § 117.155 (1980). Moreover, Minn.Stat. § 117.175, subd. 1 (1980), providing for *de novo* review of condemnation damages at the trial level, eliminates the significance here of the commission award and thus, by extension, compliance therefrom (save that compliance required by statute—*i.e.,* 75% payment).

Second, the evidence at trial of potential access was perhaps prejudicial. But this goes to a separate evidentiary issue. Correction of this, if necessary, does not require a different date for assessing damages.

Third, costs of construction (if "cure" evidence is allowed), materials, and land have generally increased since the time of the commission determination. This assertion seems true enough, but there appears no authority or policy reason for not upholding this combination of an earlier event at which costs occur and a later trial to assess those costs: as well as being the well-established eminent domain rule, it is common enough to other areas of the law. The trial court is affirmed on this issue.

We thus hold that it was fundamental error to admit evidence at the jury trial that the appellants would secure access from the City and the railroads. The trial court is reversed and a new trial ordered, at which time the jury shall be instructed that it must consider the damages to appellants on the theory that all access was taken by the condemnation proceedings.

Reversed in part, affirmed in part, and remanded for a new trial.

SHERAN, C. J., and PETERSON, J., took no part in the consideration or decision of this case.